EDWARD L. MOULTON & others *vs.* BUILDING INSPECTOR OF MILTON.

Norfolk.   May 5, 1942. — September 9, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Zoning.   Milton.   Agriculture.   Silo.   Words,* "Agricultural use."

A silo located upon a farm in a residential district, to which fodder grown on other lands controlled by the farmer was brought for storage and feeding to cattle kept on the farm, was an "agricultural use" as permitted in that district by the town's zoning by-law, although the silo was substantially detrimental to the neighboring residential property.

PETITION for a writ of mandamus, filed in the Superior Court on October 16, 1941.

The case was heard by *Dowd,* J., who ordered the writ to issue.   All parties alleged exceptions.

*L. Bryant,* for the respondent.

*F. B. Frederick,* (*H. G. Perkins* with him,) for the petitioners.

QUA, J.   The petitioners pray for a writ of mandamus to compel the respondent to revoke a permit granted by him to Harriet M. Manning for the erection of a silo on a lot of land of which Mrs. Manning holds the title in the "Wendell Park" development in Milton and for further relief. The trial judge adopted as true the findings of fact of the auditor, and must be taken for the purposes of this decision to have rejected other evidence received at the trial in so far as it may have been more favorable to the respondent than those findings.   He ordered the writ to issue.

Material findings of the auditor will here be stated.   The lot upon which the silo has now been completed is zoned under a zoning by-law of the town in a "Residence C" district.   The by-law provides that in such a district "no building or land shall be used and no building shall be erected or altered which is intended or designed to be used for a store or shop, or for manufacturing or commercial

purposes, or for other purposes except one or more of the following: 1. Detached one-family dwelling; 2. Church; 3. Educational use, not conducted for profit; 4. Agricultural use, selling only produce raised on the premises; 5. Municipal use. Public parks, playgrounds, recreation buildings, water towers and reservoirs; 6. Accessory use on the same lot with and customarily incident to any of the above permitted uses . . . ." We need not quote the remainder of this section of the by-law relating to several additional uses not of an ordinary commercial or industrial character which are permitted conditionally, since none of them could include a silo. It is provided, with some qualifications, that nonconforming uses existing when the by-law was adopted may be continued but not extended.

The petitioners reside in single family houses fronting on Wendell Park. This is a way, part of which is public and part of which is private, consisting of two roadways with a "park reservation" one hundred feet wide between them. Harriet M. Manning, to whom the permit for the silo was issued, has since the year 1900 conducted with her husband a "dairy enterprise" known as Thatcher Farm on about one and a half acres of land on Thatcher Street, adjoining the rear of lots 41 to 46 of the Wendell Park development. Mrs. Manning holds the title to these lots. Thatcher Farm is also in a residence C district. The Mannings reside at Thatcher Farm in a house facing Thatcher Street. Along the back line of the Thatcher Farm property a long, low cow barn accommodates about one hundred sixty cows, together with a pasteurizing and bottling plant. On Thatcher Farm are also a garage, hay sheds, and two silos. There is a small garden used to grow vegetables for the Manning family, and the rest of the tract consists of yards and driveways. Two bulls, four horses and about fifty hens are kept there, as well as farm carts, tractors, trucks and other incidental equipment. From twenty-two hundred to twenty-four hundred quarts of milk a day are produced and sold and delivered by drivers on several routes, and some sales of milk and eggs are made at Thatcher Farm. The cows giving milk are

kept continuously in the barn, but those that are becoming dry and the calves are pastured on the other lands to which we next refer.   The Mannings have arrangements with property owners in various parts of Milton for the use of about two hundred tracts of land of such owners, all in residence districts, for pasturing cattle and for growing hay, corn, other fodder, and vegetables.   The nearest of them is about a quarter of a mile from Thatcher Farm, but many of them are a mile and a half or more distant. The hay, corn and other fodder grown on these lands is fed to the cattle at Thatcher Farm, and most of the manure produced at Thatcher Farm is used on these outlying lands. Some of the vegetables grown on these lands are sold at Thatcher Farm.

In August, 1941, the Mannings found that their crop of corn raised on these scattered lots was too large to be stored in the two silos at Thatcher Farm and decided to build the additional silo here in question on the adjoining lot 43 of the Wendell Park property.   The permit was issued for its construction.   The sole purpose of erecting and maintaining this silo was to store fodder to be fed to cattle kept by the Mannings at Thatcher Farm, and all the fodder so stored, so far as appears, is raised by the Mannings on the other lands controlled by them, but nothing is raised on their Wendell Park lots.   The erection and use of the silo are substantially detrimental to the use of lots in Wendell Park for residential purposes and have diminished the value of many of the lots and the houses upon them.

The exemption from the operation of the zoning by-law of any "agricultural use, selling only produce raised on the premises," is complete and unconditional, except as therein stated.   It is not limited to agricultural uses that do not injure a residential neighborhood.   We have no right to assume that agricultural uses were permitted in the belief or upon any implication that they would not be injurious. It is obvious that various incidents of uses indubitably to be classed as agricultural may be detrimental to a residential neighborhood.   We need mention only the use of ordinary fertilizers.   So far as we know the town for reasons

deemed by it sufficient deliberately intended to prefer agricultural over residential uses. At all events we must take the by-law as written. There is no mystery about the words "agricultural use." They are everyday words and should be interpreted "according to the common and approved usages of the language . . . without enlargement or restriction and without regard to . . . [the court's] own conceptions of expediency." *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148. *King* v. *Viscoloid Co.* 219 Mass. 420, 425. *Martinelli* v. *Burke*, 298 Mass. 390, 392. We are not to seek for any peculiar, abstruse, or constricted signification. These words include all uses of land that in common speech and acceptation would be described as agricultural, no matter how injurious they may be to a neighborhood of homes. The test is whether the use is agricultural and not whether it is detrimental.

Nor are we here concerned with the qualification as to selling only produce raised on the premises, since nothing at all is sold at the new silo. If the selling on the adjoining Thatcher Farm of some vegetables raised elsewhere could be thought material in this connection, that was protected as a use existing when the by-law went into effect, and the existence of the silo does not extend such use. And we cannot interpret the words "selling only produce raised on the premises" as requiring the actual raising of a crop on every piece of land in a farm.

The question to be decided is therefore simply whether the new silo represents what would commonly be understood and regarded as an agricultural use of land. It is difficult to think of the ordinary silo apart from agriculture. A silo is a structure or vat for the storage of fodder harvested from the field and for its conversion into ensilage to be used as food for livestock. It is a part of the regular equipment of most farms that support any considerable amount of stock and is an important instrument in the ordinary process of husbandry. Confusion seems to us to have crept into this case because of the extraordinary scattering of the Mannings' land holdings. According to the findings, however, all their parcels, wherever situated, are employed

in a single enterprise, and that enterprise is an agricultural one. If all their lands were joined in one tract it would immediately become apparent that they were operating a dairy farm not essentially different from a multitude of dairy farms. The tilling of the soil, the raising and storing of forage crops, and the feeding of them to cattle to produce milk constitute essentially an agricultural operation. Dictionary definitions of agriculture include stock raising and dairying. If judicial definition to the same effect is desired it may be found in such cases as *Dillard* v. *Webb*, 55 Ala. 468, 474, 475, *District of Columbia* v. *Oyster*, 4 Mackey, 285, 286, *Keeney* v. *Beasman*, 169 Md. 582, *DeFontenay* v. *Childs*, 93 Mont. 480, *Rodgers* v. *Nebraska State Railway Commission*, 134 Neb. 832, *Gordon* v. *Buster*, 113 Texas, 382, *Davis* v. *Industrial Commission of Utah*, 59 Utah, 607, *Gregg* v. *Mitchell*, 166 Fed. 725, *Sancho* v. *Bowie*, 93 Fed. (2d) 323, 324, and *Gaylord Guernsey Farms* v. *Jones*, 41 Fed. Sup. 367, 368, 369. See cases collected in 2 Am. Jur. 395, § 2, and *United States* v. *Turner Turpentine Co.* 111 Fed. (2d) 400. Indeed, at the present time a large proportion of what is commonly regarded as agriculture in this Commonwealth consists of dairy farming similar, except as to the division of the land, to that carried on by the Mannings. In *Winship* v. *Inspector of Buildings of Wakefield*, 274 Mass. 380, it was held that a hen house containing about three thousand chickens in a residence district could be found to be part of a farm and therefore exempt from zoning regulations, although in that case most of the feed was purchased and not grown. The character of the use of the silo as being agricultural or otherwise is in no way affected by the concentration or dispersion of the parcels of land upon which the fodder is grown or by their nearness or distance, or by the fact that no cultivation takes place in the immediate vicinity of the silo. It follows that the use of lot 43 for the silo was permissible under the by-law.

The case of *Chudnov* v. *Board of Appeals of Bloomfield*, 113 Conn. 49, upon which the petitioners rely, is distinguishable. That was an extreme case where a hen house for about a thousand hens was located on a lot of less than

three acres in a residential neighborhood, and no crops at all were raised. Whether that decision is consistent with our own in *Winship* v. *Inspector of Buildings of Wakefield*, 274 Mass. 380, need not be considered. See *Welsh* v. *Flo*, 146 Kans. 807, 811.

It is unnecessary to deal seriatim with the exceptions of the opposing parties.

*Petitioners' exceptions overruled.*
*Respondent's exceptions sustained.*
*Petition dismissed.*