PRESLEY D. STOUT, KATHERINE HART HEDDEN, ALBERT BERKES AND ANNA BERKES, HIS WIFE, CHARLES B. VINCENT, JR., AND ADELE C. VINCENT, HIS WIFE, PROSECUTORS, v. HERBERT J. MITSCHELE AND MARY A. MITSCHELE, HIS WIFE, THE TOWNSHIP OF LIVINGSTON, A MUNICIPAL CORPORATION, AND THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF LIVINGSTON, RESPONDENTS.

Argued January 22, 1947—Decided April 11, 1947.

Before Justices BODINE and WACHENFELD.

For the prosecutors, *Grosso & Grosso* and *Robert E. Beck.*

For the respondents Herbert J. Mitschele and Mary A. Mitschele, *Alexander Waugh.*

For the Township of Livingston, *Edward Gaulkin.*

The opinion of the court was delivered by

BODINE, J. The writ in this case brings up for review the action taken by the Board of Adjustment of the Township of Livingston on August 5th, 1946, and the approval by the Township Committee of the recommendation of the board that a permit be issued to Herbert J. Mitschele to build a 40-stall, two-story horse barn on premises located in the residence A zone of the township.

The premises in question do not abut and are more than 150 feet beyond the boundary line of any district in which the structure or use is authorized by the zoning ordinance.

The permit was sought by way of a variance to the zoning ordinance.

The property in question consists of a 9-acre tract fronting east on Mount Pleasant Avenue and a rear parcel of 14 acres reached by means of a right of way.

The zoning ordinance in effect in 1931 permitted farming, dairying and truck gardening in a residence A zone. By amendment adopted September 21st, 1936, farming, dairying and truck gardening were permitted in a residence A zone "provided, however, that every building or plant for the treatment, pasteurization or bottling of milk and every barn or stable for the accommodation of more than five horses and more than five cows shall be at least 300 feet distant from every street or adjoining property line and at least 500 feet distant from any existing dwelling house."

In 1931 and until 1943 the premises were used for dairy purposes, the owner frequently having 50 cows and producing

as much as 600 quarts of milk per day. The set back of the Mitschele buildings was violative of this ordinance and allowable only because it was a non-conforming use.

By further amendment a new paragraph 9 was added in 1942, which provided as to A zone residences as follows: "For the raising or keeping of livestock, domestic animals, poultry, domestic or ornamental fowl, for the use of the occupant of the premises and his family provided that such use is not carried on as a business, and that the said livestock, domestic animals, poultry are kept in a wholly enclosed area and provided further that any structure utilized for such purpose be located in the rear yard, and that every part thereof and its appurtenances are distant at least fifty feet from any dwelling house or building used for human habitation."

In 1943, the Mitscheles discontinued the retail milk business and gradually liquidated the wholesale dairy business. They then started to carry on the enterprise of raising and selling horses. They have had as many as 100 horses on the premises, and, as we have noted, the barn to be built contemplates containing 40 stalls for horses.

In the latter part of 1943, without permit, Mitschele had built a barn. The Board of Adjustment afterwards granted the variance. Of course, this action cannot now be questioned.

The situation in the Township of Livingston is a curious one. It has undergone a tremendous growth. As the city crowds into the country the successful farmer finds that his occupation becomes less and less pleasing to his neighbors.

The problem posed is: can we restrict the use of this property to dairy purposes or can the farmer, when he finds the dairy business becoming less profitable, turn to the raising of horses and continue so doing because of his right to continue a non-conforming use?

In *North American Building and Loan* v. *Board of Adjustment of New Brunswick*, 117 *N. J. L.* 63, a building used for the storage of trucks, sand and gravel was to be used for the storage of cheese. The court held that such change of use was not a variance.

We do not think it can be said that the record before us shows that the raising of horses as conducted is not farming. It certainly is a form of farming and was incidental to that occupation from the earliest times. The farmer needs to raise animals quite as much as crops of wheat and corn. Some specialize in one branch of the enterprise and others in a different branch, but animal husbandry is as important for the success of farming as the growing of grain, corn and hay.

The Board of Adjustment performs a *quasi*-judicial function which is essentially discretionary in its character. There is nothing in the record which shows that the discretion was abused or that the action taken was arbitrary or capricious. See *Dubin* v. *Wich,* 120 *N. J. L.* 469.

When we start with the premise that the respondent could use his farm for raising cattle then there seems to be no reason why he should not use the farm for raising horses. Nor do we think that because there was a by-product which was sold for medicinal purposes changes the result in any respect.

The proofs in this case clearly demonstrate that had the variance not been granted the respondent would have been handicapped in the exercise of the facilities which he had at hand. It might be pointed out that he conducts no horse auction or other business on the premises, but confines his activities to the raising of horses and the salvaging of the by-products which are taken from the premises for manufacturing purposes.

In fine, the premises in question could be used for farming. This was a non-conforming use. Because the owner saw fit to use the premises for a kind of farming he had not previously followed, under the facts in this case, is not a violation of the zoning ordinance. If in such use he required other buildings that circumstance standing alone does not make the action of the Board of Adjustment unreasonable. A purpose in the statute to regulate the kind of farming which a farmer may conduct is not to be implied unless it affects the public health.

We have considered the other points raised but think that they have been substantially covered in this opinion.

The writ will be dismissed, with costs.