21 N.J. Super. 430 (1952)
91 A.2d 353
ATTILIO DE BENEDETTI AND ADELINE DE BENEDETTI, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF RIVER VALE, N.J., IN THE COUNTY OF BERGEN, AND THE BOARD OF ADJUSTMENT OF THE TOWNSHIP OF RIVER VALE, N.J., AND NELSON ROBERGE, BUILDING INSPECTOR OF THE TOWNSHIP OF RIVER VALE, N.J., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1952.
Decided September 25, 1952.
*431 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
*432 Mr. Richard G. Kroner argued the cause for the plaintiffs-respondents (Messrs. Freeman & Kroner, attorneys; Mr. George S. Freeman, of counsel).
Mr. George F. Losche argued the cause for the defendants-appellants (Mr. Joseph Frederick Bratt, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
In this zoning case, the action was instituted to obtain a building permit and not a variance. Plaintiffs are owners of certain premises situate in the Township of River Vale, County of Bergen, and were such owners prior to November 29, 1944, the date on which the Township of River Vale adopted its zoning ordinance.
The plaintiffs' premises are located in "Residence A District" created by the zoning ordinance. Prior to the time of the adoption of the zoning ordinance and ever since, the De Benedettis have, in addition to residing at the aforementioned premises, engaged in commercial chicken farming thereon.
On or about April 20, 1951, plaintiffs applied to the building inspector for a permit to erect additional chicken housing facilities. The building inspector refused to issue the permit to the plaintiffs and on appeal to the Board of Adjustment of the Township of River Vale, that board similarly refused to direct its issuance. Thereafter, on July 5, 1951, plaintiffs instituted an action in the Superior Court, Law Division of Bergen County, to compel its issuance.
The trial court found that the undertaking and use for which the application for a building permit was made constituted farming within the intent and purpose of the zoning ordinance; that the use requested constituted enlarging or erecting additional buildings in the normal course of business within the sanction of the enactment; "That, as stipulated by the plaintiff and the defendant said use complies in all respects and conforms to set-back, size, and structural design as required by the building code and the Zoning *433 Ordinance * * *"; "that the use requested is not an accessory building within the intent and definition of the Zoning Ordinance * * *"; and that the use to which plaintiffs were to devote the premises was permissible and within the intent and wording of the ordinance and, therefore, entered judgment directing the issuance of the permit. The defendants appealed from the ensuing judgment.
The pertinent provisions of the ordinance are:
"Article IV.
Use of Buildings and Premises.
Section 1  Residence A District.
(a) In a Residence A District no building or premises shall be used and no building or part of a building shall be erected which is arranged, intended or designed to be used, in whole or in part, for any purpose except the following with its usual accessories:
(1) One family detached building."

* * * * * * * *
"Nothing herein contained shall prevent or prohibit persons in this district engaged in farming of any type from re-constructing, enlarging or erecting additional buildings in the normal course of such business, provided said buildings in all respects conform to set-back, size and structural design hereby required."
And, in section B of Article IV, it provides:
"(b) Accessory Buildings.
(1) No accessory buildings shall be used for residence purposes except for a chauffeur or gardener or for housing servants of the family; and, where there are more than two living rooms therein, such building shall be at least twenty-five (25) feet distant from any street and five (5) feet distant from any lot line.
(2) No such accessory building shall exceed twenty (20) feet in height measured from the average level of the ground to the underside of the eaves, nor shall any accessory building be nearer the front street line than the main building, nor shall it exceed six hundred (600) square feet in gross area, nor shall the area of all such accessory buildings exceed fifteen (15) per centum of the total lot area, such percentage to be included in the total permitted percentage of coverage."
The defendants-appellants urge that extension of non-conforming uses should be closely restricted and provisions allowing same should be strictly construed against the non-conforming *434 user. It is argued that the proposed erection of additional chicken coops is expansion from a part-time operation to the full-time employment of the plaintiff and thus cannot be considered to be "in the normal course of such business" as provided for in the ordinance. Defendants further argue that the size of plaintiffs' proposed building is violative of the provision of the ordinance restricting the size of accessory buildings that may be erected. Plaintiffs argue contrarywise.
The defendants' basic contention is that plaintiffs' proposed extension of their chicken business is not in the normal course of their farming enterprise. They point to the fact that heretofore plaintiffs have operated their chicken business with approximately 350 to 375 layers (although during 1943, 1944 and 1945, De Benedetti had 1,100 or 1,200 and, since 1945, 700 or 800, which Mr. De Benedetti managed as a part-time project in addition to other regular employment. Now plaintiffs propose to increase the facilities to accommodate approximately 1,500 layers and since Mr. De Benedetti has lost his other employment, he will devote his full time to this enterprise. The defendants contend that this does not constitute "reconstructing, enlarging or erecting additional buildings in the normal course of such business," as provided for by the ordinance. We would like to consider this argument together with defendants' other contention, that plaintiffs are engaged in a non-conforming use of their property and that provisions of the ordinance should be construed against allowing an enlargement thereof.
"The use of lands and, by the same token, the jus disponendi are subordinate to the police power; and zoning is comprehended in the police power exerted by the amendment of October 18, 1927, to the State Constitution of 1844 (P.L. 1928, p. 820) and Article IV, Section VI, paragraph 2 of the Constitution of 1947. The essence of zoning is territorial division according to the character of the lands and structures and their peculiar suitability for particular uses, among other considerations, and uniformity of use within the division." Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949).
*435 Through the years there has been a gradual broadening of the legal concept of valid zoning restrictions, as was held in Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509 (1949), at p. 513:
"What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously. * * *."
This rule goes beyond the finding based strictly on the police power, other than general welfare, and establishes a test grounded in the community use of the land in the municipality with due consideration to all general conditions and needs, present and reasonably to be anticipated in the region. 8 McQuillin, Municipal Corporations, Sec. 25.119, on zoning; also, Secs. 25.124 and 25.131. It is, accordingly, necessary to obtain a broad perspective of the municipality and the region in which it is located.
The Township of River Vale is a small township in Bergen County, approximately eight miles north of Hackensack, comprising about 2,600 acres and having a population of approximately 1,760 persons. The zoning ordinance indicates that five districts were created, one for light industry, one for commercial enterprises and the remaining three for residential, which permitted the conduct of existing farming enterprises in the residential districts. At the trial, it was stipulated that plaintiffs' chicken business was a farming business. It is not seriously challenged that the particular area known as Residential A is largely a farming area. That the governing body intended to exempt existing farming enterprises and to continue their operation even to the extent of "reconstructing, enlarging or erecting additional buildings in the normal course of such business" seems entirely clear. From the very use of the quoted language of the ordinance, it is apparent that the municipality intended to establish a division of land according to its characteristic and use and *436 the peculiar suitability for such use, not only according to the peculiar use prevailing in the municipality at the time of its enactment, but with a view to the use to which the land might be put most advantageously and to which it was to lend encouragement. Such provisions in the ordinance are permissible. Stout v. Mitschele, 135 N.J.L. 406 (Sup. Ct. 1947); Stout v. Valentine, Ibid. 410 (Sup. Ct. 1947). In the case of Moulton v. Building Inspector of Milton, 312 Mass. 195, 43 N.E.2d 662 (Sup. Jud. Ct. 1942), the following uses were permitted in "Residence C" district created under the municipality's zoning by-law:
"1. Detached one-family dwelling; 2. Church; 3. Educational use, not conducted for profit; 4. Agricultural use, selling only produce raised on the premises; 5. Municipal use. Public parks, playgrounds, recreation buildings, water towers and reservoirs; 6. Accessory use on the same lot with and customarily incident to any of the above permitted uses * * *."
Notwithstanding the fact that the zoning by-law "provided, with some qualifications, that nonconforming uses existing when the by-law was adopted may be continued but not extended," the court upheld the issuance of a building permit for a silo on the plaintiffs' premises located in "Residence C" district. To construe the enactment in the manner contended by the defendants would inject into the zoning regulations a consideration of the use which an individual owner made of his time as having a bearing upon the legitimate use that might be made of his lands. We fail to perceive any importance which the amount of individual time devoted to the conduct of an admitted farming enterprise in the use of plaintiffs' lands would have in determining eligibility for enlargement under the ordinance, for it is the use of the land itself which is controlled, not one's time, and it is that use of land which is the subject matter of the legislative grant of authority to municipalities to control by zoning regulations. In fact, at the trial, counsel for the defendants, conceded that under the ordinance, if the plaintiffs applied for a permit to build an addition to accommodate 200 more *437 chickens, the next year to accommodate 200 more and then the next year to put on an addition to accommodate 200 more, the municipality would be obliged to give him a permit "for a building 20 x 30, 600 sq. ft.; and I think that in a year or two he could come back and ask us for another. Now, that is what the ordinance says." Under such a construction it is difficult to comprehend why the plaintiffs would not be entitled to erect a building to accommodate the increased flock of chickens at one time, rather than in annual installments.
The defendants contend further that plaintiffs' proposed building is violative of Article IV, Section 1-B, pertaining to accessory buildings. Section 3  Definitions (v) of the zoning ordinance, defines an accessory building as "a building subordinate to the main building on a lot and used for purposes customarily incidental to those of the main building." Article IV, Section 1-B, is clearly not applicable. The language there employed indicates that that provision applies to buildings used or proposed for use in conjunction with the main dwelling house. Certainly, chicken houses could not be considered as accessory to, or complementary to, the main building of plaintiffs' premises, which is the dwelling house. It was held in Collins v. Board of Adjustment of Margate City, supra, that in a district devoted to single family dwelling units that a provision regulating the use of accessory buildings or buildings incidental to the principal dwelling contemplated a garage and a residence for servants of the occupant of the main dwelling. Commercial chicken houses are inapposite to the category of accessory buildings contemplated by the ordinance as applied to single family dwelling units.
We find no merit in the other grounds advanced by appellants for a reversal of the judgment.
The judgment of the Superior Court, Law Division, is affirmed.