MILDRED CROUSE, claimant-appellee, v. LLOYD'S TURKEY RANCH, appellant.

No. 49761.

(Reported in 100 N.W.2d 115)

DECEMBER 15, 1959.

Richard C. Turner, of Council Bluffs, for appellant.

Connolly & Connolly, of Council Bluffs, for appellee.

THOMPSON, J.—In 1956 Ralph Lloyd, Jr., was engaged in business in Pottawattamie County under the trade name of Lloyd's Turkey Ranch. He operated on a six-acre tract, where he raised turkeys and some chickens. Each year when poultry

was ready for the market, he processed about half of the turkey crop by slaughtering and dressing them. This was done in a separate building on the ranch. There were three or four regular employees; when the processing started in the fall about six more were hired. The plaintiff was one of these extra helpers. She was employed in October of 1956 and worked until December 14 of the same year, when she was injured by slipping on the floor in the building where the turkeys were processed. The defendant also raised pheasants, guinea hens, apples, pears, some cattle, and rented horses, and sold eggs from the poultry. The plaintiff's work was solely in the building where the turkeys were processed. She had no part in the raising of any of the produce. Her work was seasonal, and the record indicates it would have ended when the processing of the turkeys for the Christmas trade was finished. The defendant testified that he raised about 8000 turkeys in 1956, about half of which were processed and the remainder sold live to packers. While both the Commissioner and the District Court referred to the supposed fact that he purchased turkeys from others for processing, the defendant in argument denies this, and we think the record, fairly construed, does not show the processing of any turkeys except of his own raising. We shall so consider it. The plaintiff prevailed before the Deputy Commissioner, the Commissioner, and the trial court, and the defendant has brought the case to us on appeal.

I. The defendant relies entirely upon the exclusion contained in section 85.1, subsection 3, Code of 1954. It is there provided the Workmen's Compensation Act shall not apply to "Persons engaged in agriculture, insofar as injuries shall be incurred by employees while engaged in agricultural pursuits or any operations immediately connected therewith, whether on or off the premises of the employer * * *." The defendant says he was engaged in agriculture, and the plaintiff was injured while employed in an operation immediately connected therewith. He concedes that while cleaning the floor she was not engaged in an agricultural pursuit, but contends it was closely connected.

The appeal poses the difficult question of when the processing of crops raised on a farm or ranch ceases to be agriculture

and becomes a commercial enterprise. "Agriculture" is variously defined; but generally, in its broad sense, it is said to be "the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock." 3 C. J. S., Agriculture, section 1, page 365. In Slycord v. Horn, 179 Iowa 936, 945, 162 N.W. 249, 252, 7 A. L. R. 1285, we quoted with apparent approval, from Simons v. Lovell (7 Heisk.) 54 Tenn. 510, 516: " 'It is equivalent to husbandry, and husbandry, Webster defines to be the business of a farmer, comprehending agriculture or tillage of the ground, the raising, managing and fattening of cattle and other domestic animals, the management of the dairy and whatever the land produces.' "

It will be noted that the exclusion in our statute, section 85.1(3), is of "Persons engaged in agriculture, insofar as injuries shall be incurred by employees while engaged in agricultural pursuits." Professor Maurice H. Merrill, in his careful analysis of this statute in Fifteen Years More of Workmen's Compensation in Iowa, 32 Iowa Law Review, 1, 7, points out that two things must concur to bar recovery by the injured employee under this statute. He says:

"The exclusion is limited to people [persons] who are 'engaged in agriculture' and then only if at the time of injury they are engaged in an agricultural pursuit or an operation closely connected therewith." So he points out that in Trullinger v. Fremont County, 223 Iowa 677, 273 N.W. 124, the plaintiff was permitted to recover because he and his employer were not engaged in agriculture, although at the time of injury he was engaged in an agricultural pursuit. He distinguishes this from Taverner v. Anderson, 220 Iowa 151, 261 N.W. 610, by the fact that in the latter case the employee was engaged both in agriculture and in an operation at least closely connected therewith.

The Iowa Law Review article also notes an erroneous statement in Criger v. Mustaba Investment Co., 224 Iowa 1111, 1115, 276 N.W. 788, 790, where it is said the statute "excludes all persons engaged in * * * agricultural pursuits, or any operations connected therewith." This would bar compensation to any person either engaged in agriculture *or* any operation connected therewith; while obviously, we think, to be excluded he must have been *both* engaged in agriculture, *and* an agricultural

pursuit or an operation connected therewith at the time of the injury. The quoted statement from the Criger case is disapproved.

The defendant here appears to be of the opinion that the term "engaged in agriculture" must be held to apply only to the employer. As we view the case, the point is not important. Professor Merrill does not make such a distinction; 32 Iowa Law Review, supra, pages 7 and 8, nor do we, although the question is not decisive. The defendant then proceeds to assume as an inescapable fact that the employer here was engaged in agriculture and that the injured employee, the plaintiff, was clearly engaged at least in an operation closely connected with agricultural pursuits and so is excluded from the benefits of the Act.

It is upon the question whether the employer was engaged in agriculture in the operation of the turkey packing plant that we part company with the defendant and the able brief and argument of his counsel. Of course the employer was engaged in agriculture, under the broad definition, in raising his poultry and in marketing it. But an employer may be engaged in two distinct occupations, one agricultural and one commercial, manufacturing, or otherwise industrial. 99 C. J. S., Workmen's Compensation, section 29, pages 184, 185; Tucker v. Newman, 217 Minn. 473, 14 N.W.2d 767, 770; Evansville Veneer & Lumber Co. v. Mullen, 116 Ind. App. 616, 65 N.E.2d 742, 744; Campos v. Garden City Co., 166 Kan. 352, 201 P.2d 1017, 1019. Our own statute, section 85.1, supra, recognizes this. Our problem here is to determine whether the defendant-employer was so engaged in two distinct occupations, or solely in agriculture. If the processing of the turkeys was a part of agriculture within the broad meaning of the term, then it follows that the exclusion applies; because the plaintiff would then have been both engaged in agriculture and injured while in an agricultural pursuit or one closely connected therewith.

There is no evidence as to the custom of turkey raisers in processing their own turkeys, or selling them live. The New Jersey Supreme Court has held that the cleaning, grading and packing of potatoes is essential to the preparation of the potatoes for market, and so excluded from the Unemployment Compen-

sation Law. Pioneer Potato Co. v. Division of Employment Security, 17 N. J. 543, 111 A.2d 888, 53 A. L. R.2d 397. This case is cited and relied upon by the defendant. But we think there is a difference between the processing of potatoes involved therein and the slaughter of turkeys. If the defendant had been engaged in extensive raising of hogs, or cattle, and had set up a packing plant on his premises, we think it would not be greatly debatable that he was engaged in two different occupations, one within and one excluded from the Act. The record shows it was possible to sell the turkeys alive, because the defendant did so with about one half of his crop.

The determination of where agriculture stops and commercial processing begins is not easy. The defendant thought it more profitable to process as many of his turkeys as he could sell; but this in no way answers the question. Grains must be harvested, and fruits and vegetables must be garnered and put in condition for marketing; and these are properly a part of agriculture. But the problem before us goes one step further. It involves the question of a process, not necessary but perhaps more profitable, in marketing. In this situation we resort to an established rule followed in other jurisdictions.

 We ourselves have frequently said that the workmen's compensation law is to be liberally construed in aid of accomplishing the object and purpose of the legislation. Jacques v. Farmers Lumber & Supply Co., 242 Iowa 548, 551, 47 N.W.2d 236, 238, and cases cited. This principle has been applied to the determination of whether an employee was engaged in an agricultural pursuit at the time of his injury.

In 99 C. J. S., Workmen's Compensation, section 27, page 175, it is said: "* * * with respect to the employments to which they apply, the acts are to be construed liberally, or beneficially, and to effectuate the legislative purpose." Following this, in the same volume of C. J. S., it is stated that "a compensation statute is to be construed liberally and reasonably with the view of extending its beneficent provisions to all who can be fairly brought within them"; and the rule "applies in determining whether one is within the agricultural or farm worker exemption from the statute." 99 C. J. S., Workmen's Compensation, section 33, pages 190, 191.

This rule has been applied in Free v. McEver, 79 Ga. App. 831, 833, 54 S.E.2d 372, 374. Here the employer was engaged in meat packing, and also operated a farm where animals were kept from the time of procurement until they were slaughtered. The employee worked both in the packing plant and upon the farm in caring for the animals there and raising grain and hay. The Georgia Court of Appeals said: "the words of the statute must be construed reasonably and liberally with the view of applying the beneficent provisions of the statute so as to effectuate its purposes, and to extend them to every class of workman and employee that can fairly be brought within the provisions of the law." The employee was engaged in work on the farm when he was injured; but the court reversed a judgment of the trial court denying compensation.

The Idaho Supreme Court has followed the same rule. In Mundell v. Swedlund, 59 Idaho 29, 33, 80 P.2d 13, 14, 15, it is said: "Dorrell v. Norida Land & Timber Co., 53 Idaho 793, 27 P.2d 960, is authority for the proposition that in determining whether the injured party was, or was not, employed in an agricultural pursuit, at the time of the accident, * * * the Workmen's Compensation Law, and all proceedings under it must be liberally construed with a view to effect the object of the law and to promote justice."

See also Fels v. Industrial Commission, 269 Wis. 294, 69 N.W.2d 225, 226.

It is true that a clear legislative purpose must not be defeated or whittled away by a strained construction, in an attempt to apply this rule. But we think it may be applied here to resolve a somewhat doubtful status of the injured employee. If the defendant had not been engaged also in the raising of turkeys, if his sole vocation had been that of slaughtering them and processing them for the market, it could not reasonably be urged that he was engaged in agriculture. An operator of a packing plant is not so engaged. The plaintiff had not at any time had any connection with the raising of the fowls; her sole employment was in the packing plant. We think the holding that the defendant was engaged in two businesses: one, the agricultural pursuit of raising and marketing turkeys and other poultry, and the other, that of operating a packing plant, is

fairly warranted by the record. This is particularly so when we consider the rule above stated, that in case of doubt we must construe the statute liberally and with a view to extend its aid to every employee who can fairly be brought within it. The purpose of the Workmen's Compensation Acts generally is to furnish a measure of protection to those who may be injured while employed; and many of the Acts refer to "hazardous occupations" and the need for such compensation for those who suffer from industrial accidents. Our own statute does not use the word "hazardous"; but we think it was intended to protect against injuries received in other than agricultural occupations. The danger is just as real if the packing plant is operated by one who also raises the animals, or fowls, which are therein processed, as if they were purchased from others. The purpose of the law to protect against accidents occurring in such a business seems evident. It is not a strained construction of the words "agriculture" and "agricultural pursuits" to hold that they do not apply to the occupation of the plaintiff in the case before us.

We have considered the other authorities cited by the defendant, but do not find them in point. There is an informative discussion of "processing" of foods in preparation for the market by changing them to a different state in Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Commission, 248 Iowa 497, 501, 502, 503, 81 N.W.2d 437, 440, 441.—Affirmed.

All JUSTICES concur.