FARMEGG PRODUCTS, INC., Appellant,

v.

HUMBOLDT COUNTY, Iowa, et al.,
Appellees.

No. 54287.

Supreme Court of Iowa.

Sept. 27, 1971.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

John P. Mansfield, Humboldt County Atty., for all appellees except Dennis Hagler and Gilbert Nissen.

MASON, Justice.

This is an equity action brought by Farmegg Products, Inc. for declaratory judgment to construe Code section 358A.2 of the County Zoning Enabling Act and to determine validity of portions of the Humboldt County Zoning Regulations insofar as those regulations relate to agricultural uses. Although on the face of the petition the action appears as a class action, plaintiff disclaims any intention to seek a decree binding on any person other than defendant-county and defendant-county officials and their successors in office. Defendants agree and the record contains no finding by the trial court the case was a class action.

The matter reaches us on plaintiff's appeal from an adverse decree of the trial court. It will not be treated as a class action.

Section 358A.2 as amended by Acts of the Sixtieth General Assembly, chapter 218, section 2 and in effect at the time material here provides:

"Farms exempt. No regulation or ordinance adopted under the provisions of this chapter shall be construed to apply to land, farm houses, farm barns, farm outbuildings or other buildings, structures, or erections which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used; provided, however, that such regulations or ordinances

which relate to any structure, building, dam, obstruction, deposit or excavation in or on the flood plains of any river or stream shall apply thereto."

The following are relevant provisions of the Humboldt County Zoning Regulations:

"Section 7. Farm Exemptions. The provisions of these regulations shall not prohibit the use of land for agricultural purposes or the construction or use of buildings or structures incidental to the use for agricultural purposes of the land on which such buildings or structures are located an (sic) no zoning certificates shall be required for any such use, building or structure.

"Section 10. A Agriculture District.

"Purpose: To allow the use of land so designated for agricultural purposes only. No zoning certificates are required for such uses.

"A. Permitted Uses:

"1. Agriculture and the usual agricultural buildings and structures.

" * * *.

"10. Stables, private and public and riding academies and clubs, and other structures for housing animals or fowl. Any such structures must be located at least two hundred (200) feet from all boundary lines of the property on which located. Public stables and riding academies and clubs shall be permitted one doubleface sign on the premises not to exceed two (2) square feet per face.

" * * *.

"Section 12. R–S Suburban Residence District.

"Purpose: Residence districts that are out of current or permanent reach of any sanitary sewer system and in accordance with chapter 409 of the Iowa Code.

"A. Permitted uses.

" * * *.

"3. Permitted uses in the Agriculture District.

" * * *."

Plaintiff seeks relief on the theory its proposed construction on and use of the land are exempt from the provisions of section 358A.2 and section 7 of the Humboldt County Zoning Regulations; that section 10(A) (10) is void to the extent it restricts structures and uses exempt under this code section and provision of the County Regulations. Farmegg asserts no zoning certificate or building permit is required for its proposed use of the land involved.

There is no contention the procedure for preparation, enactment and promulgation of the County Zoning Regulations of Humboldt county as provided in chapter 358A, Iowa Code was not followed.

The essential evidentiary facts are contained in a stipulation and the testimony of the president of plaintiff-corporation.

Plaintiff's proposed business is to produce eggs for the market by raising baby chicks in cages for 22 weeks, then moving the chicks to egg-laying houses where the eggs will be produced, processed and marketed.

Farmegg owns a plot of ground located in the Northeast Quarter of Section 23 in Township 91 North, Range 29, West of the 5th P. M., Humboldt County, Iowa. It is outside the corporate limits of any city or town. Before purchase by plaintiff the real estate had been part of an 80-acre farm. The tract is approximately 600 feet in depth from the roadway and at the time of trial had been changed from F–CN district (flood plain conversation) to R–S (suburban residential district).

Plaintiff intends to erect two 40 by 400-foot steel buildings on this site of approximately four acres. Each structure would have a setback of 50 to 150 feet from the lot line with a distance of 100 feet between each building. The land would be used solely as sites for the buildings and not for the production of grain or other feed or the production of any produce other than the raising of chicks. The ground not covered by the buildings will be left in grass. Sheep will graze, not as a livestock operation but merely to keep the grass clipped. The buildings and structures proposed by plaintiff would not be constructed in or on the flood plains of any river or stream.

Under plaintiff's plan of operation approximately 40,000 chicks would be placed within each building and confined there in wire cages holding 12 birds per cage for 22 weeks. The chicks would not be allowed free either in the buildings or in the area surrounding the structures. This concept of raising pullets, we are told, is commonly called "grazing on wire." After 22 weeks the chicks are transferred to plaintiff's egg-laying houses presently located outside of Humboldt county. The egg-laying houses constitute the second phase of plaintiff's operation.

The court decreed the construction and usage proposed by Farmegg are not exempt from the provisions of the county zoning regulations and are subject to section 7 thereof.

Plaintiff asserts the court erred in concluding the structures and operations of Farmegg in raising chicks from one day of age to 22 weeks of age (1) are not exempt from county zoning by reason of Code section 358A.2, (2) are not exempt from county zoning by reason of section 7 of the Humboldt County Zoning Regulations and (3) are restricted by the setback provisions contained in section 10(A) (10) of the County Zoning Regulations.

Plaintiff combines its argument in support of these propositions in one division.

Its appeal presents the question whether the contemplated use of property acquired by plaintiff is to be considered agricultural property because of its use, and exempt

from any zoning regulation under chapter 358A.2 of the 1966 Code of Iowa.

I. Farmegg maintains its proposed use of the land clearly constitutes "farm houses, farm barns, farm outbuildings or other buildings, structures or erections which are primarily adapted by reason of nature and area, for the use for agricultural purposes."

The company argues that if such use is exempt the setback provisions of section 10(A) (10) are invalid and unenforceable as to the uses proposed by Farmegg.

Section 358A.2 with modifications has been a part of the county zoning chapter of the code since enacted in 1947. Defendant contends it provides the only exemption from county zoning.

We consider plaintiff's contention in light of the undisputed fact the land in question has no use in plaintiff's proposed operation other than as a site for the two-unit structures. In other words, the premises in question would be devoted entirely to raising chicks from one day of age to 22 weeks of age and would not be used in conjunction with or as an incident to ordinary farming operations as distinguished from those of a commercial nature.

Since neither section 358A.2 nor chapter 358A furnishes any definition of the term "agricultural purposes," we must determine what is meant by the words "which are primarily adapted by reason of nature and area for use for agricultural purposes" contained in the first clause of this section. For purposes of determining the issue stated, supra, the key term is "agricultural purposes."

The authors of an annotation entitled "Construction and application of terms 'agricultural,' 'farm,' 'farming,' or the like, in zoning regulations" in 97 A.L.R.2d 702 at 704 say:

"The terms 'agriculture' or 'farming' or their derivatives have been construed or defined in a number of cases involving the use of such term or terms in zoning regula-tions. While the terms are more or less synonymous, there is authority for the view that an exemption for agricultural purposes is much broader than one for farms." At page 706 definitions of agricultural and agriculture adopted by courts of various jurisdictions are collected.

We quote from one of the decisions cited, Hagenburger v. Los Angeles, 51 Cal. App.2d 161, 164, 124 P.2d 345, 346–347:

"The question of what constitutes 'farming' is one which has been subject to much comment in the decisions. The authorities which define the term are found generally in the cases involving the operation of workmen's compensation acts where 'farm labor' is exempted from the operation of the act. Webster defines 'farming' as the act or business of cultivating the land; the business of tilling the soil; to produce crops or animals on a farm. He defines a farm as a plot or tract of land devoted to the raising of domestic or other animals; as a chicken farm; a fox farm; a tract of land devoted to agricultural purposes. 'Agriculture' he defines as the art or science of cultivating the ground; the art or science of the production of plants and animals useful to man or beast; it includes gardening or horticulture, fruit growing, and storage and marketing. The terms farming, husbandry and tillage are said to be synonymous of or equivalent of the term agriculture."

So far as we are able to find this court has never defined agricultural or agriculture when those terms are employed in a zoning regulation. However, we have had occasion to define them where cases involving our workmen's compensation act was under consideration. See Sylcord v. Horn, 179 Iowa 936, 944–945, 162 N.W. 249, 252, 7 A.L.R. 1285 and Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 159, 100 N.W.2d 115, 117.

In the last cited case there is this language:

" * * * 'Agriculture' is variously defined; but generally, in its broad sense, it

is said to be 'the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.' 3 C.J.S., Agriculture, § 1, page 365. In Sylcord v. Horn, 179 Iowa 936, 945, 162 N.W. 249, 252, 7 A.L.R. 1285, we quoted with apparent approval, from Simons v. Lovell (7 Heisk,) 54 Tenn. 510, 516: 'It is equivalent to husbandry, and husbandry, Webster defines to be the business of a farmer, comprehending agriculture or tillage of the ground, the raising, managing, and fattening of cattle and other domestic animals, the management of the dairy and whatever the land produces.' "

In Taverner v. Anderson, 220 Iowa 151, 154–156, 261 N.W. 610, 612, this court held a farm employee engaged to assist in cutting of sugar cane and in operation of a sorghum mill on a farm was engaged in an agricultural pursuit in affirming the trial court's decree sustaining the industrial commissioner's denial of relief claimed under the workmen's compensation law.

In Trullinger v. Fremont County, 223 Iowa 677, 681, 273 N.W. 124, 126, another workmen's compensation case, the definition of agricultural stated in Sylcord v. Horn, 179 Iowa at 944, 162 N.W. at 252, is repeated.

3 Am.Jur.2d, Agriculture, section 1, furnishes this definition:

"In its broad and commonly accepted sense, 'agriculture' may be defined as the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every process and step necessary and incident to the completion of products therefrom for consumption or market and the incidental turning of them to account. 'Agriculture' is broader in meaning than 'farming'; and while it includes the preparation of soil, the planting of seeds, the raising and harvesting of crops, and all their incidents, it also includes gardening, horticulture, viticulture, dairying, poultry, bee raising, and, more recently, 'ranching.' More spe-cifically, however, it refers to the field, or farm, with all its wants, appointments, and products, as horticulture refers to the garden, with its less important, though varied, products.

"Whether a particular type of activity is agricultural depends in large measure upon the way in which that activity is organized. The question is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The test is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity."

All of which brings us to this statement in Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 760–761, 69 S.Ct. 1274, 1277–1278, 93 L.Ed. 1672, a case involving the Fair Labor Standards Act, "Agriculture, as an occupation, includes more than the elemental process of planting, growing and harvesting crops. There are a host of incidental activities which are necessary to that process. Whether a particular type of activity is agricultural depends, in large measure, upon the way in which that activity is organized in a particular society. *The determination cannot be made in the abstract.* * * * Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture *nor by the physical similarity of the activity to that done by farmers in other situations.* The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity." (emphasis supplied)

Plaintiff relies on Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 182 A.2d 692, the subject of the annotation in 97 A.L.R.2d 697. There plaintiffs sought a zoning permit for construction of 15 "pole barns" on their 42-acre tract of farmland which was situated in a town-

ship agricultural zone and it appeared plaintiffs desired to use the land to raise some 40,000 to 50,000 turkeys and to grow grain which would provide feed from some 3,000 to 4,000 of the turkeys. The court concluded that while the contemplated use of the land was commercial, it was also agricultural and was permissible under the terms of the zoning ordinance which permitted agriculture and all business incidental to the processing and marketing of farm products, except for certain proposed use of land and buildings which included among others, commercial slaughter houses, markets, stockyards, fertilizer plants and all other pursuits of a commercial nature.

The fact feed was to be produced on the land for part of the turkeys makes the case factually distinguishable. The turkey business was to be operated in conjunction with or as an incident to ordinary farming operations, a factual circumstance not present here.

The same is also true of the 1968 Ops. Att'y Gen. 450 cited by plaintiff, particularly as to point "b" of the opinion. There the remainder of the farm not used as a cattle feeding lot was farmed and all crops grown thereon were fed to the cattle in the feed lot, a factual circumstance that led the author to express the opinion the venture described in point "b" was exempt under the provisions of section 358A.2. Whereas, in point "a" of the opinion the feed lot was not operated in conjunction with any farm operation nor was cattle feed produced on the premises. It was the author's opinion the situation presented in point "a" was not exempt from the provisions of the statute.

We wish to acknowledge the opinion of the Attorney General cited has been helpful to the court in this matter, particularly in the collection of decisions.

Plaintiff also cites Board of County Commissioners of Johnson County v. Brown, 183 Kan. 19, 325 P.2d 382. In that case a portion of the building in question was being used as a garage and body repair shop. Another part was being used by the owner as an aviary for the purpose of raising canaries for sale. As we read the opinion, only the operator of the garage and body shop was appealing. The case is not helpful.

In the case before us, no livestock are to be kept on the land except the few sheep mentioned and those for a limited purpose. Not one pound of the feed furnished the chicks will be produced on the premises. The property is not to be equipped with any implements of farms. There are to be no barns, sheds or buildings for the housing of livestock. Those proposed are to be equipped with vent fans, automatic feeders, watering equipment and manure removal equipment suitable for raising chicks. The chicks are to be confined in wire cages hung from rafters of the proposed structures. No part of plaintiff's land is to be used for production of crops, fruits or vegetables.

It is clear the activity proposed by plaintiff in the present case will be organized and carried on as an independent productive activity and not as part of an agricultural function.

It cannot be logically claimed that the proposed structures would be "primarily adapted by reason of nature and area, for use for agricultural purposes, while so used."

Defendants argue there is the further fact the land in the general area in which the buildings are proposed is not "primarily adapted" for agriculture since the Humboldt county zoning commission and the board of supervisors have indicated a contrary view. Initially, the area in question was zoned as flood plain, a classification specifically subjected to county zoning even though used for farming purposes. Later, the area was re-zoned as a suburban residence district. Defendants maintain the zoning authorities at no time believed the area was primarily adapted to agricultural uses, their affirmative action

shows to the contrary. There is merit in defendant's position.

We hold plaintiff's proposed construction and usage of the land in question are not exempt from the provisions of the Humboldt County Zoning Regulations by reason of section 358A.2, The Code; such construction would not be exempt under section 7 thereof from the provisions of the regulations requiring a zoning certificate or building permit and a setback of 200 feet.

The case is therefore

Affirmed.

All Justices concur except UHLEN-HOPP, J., who dissents.

UHLENHOPP, Justice (dissenting).

Do large mechanized chicken houses in which chickens are raised from small chicks to laying hens constitute buildings "primarily adapted, by reason of nature and area, for use for agricultural purposes"? Such is the question posed by this county zoning case.

We may put aside cases involving poultry houses as nuisances, such as Higgins v. Decorah Produce Co., 214 Iowa 276, 242 N.W. 109. No such charge is made here.

Plaintiff Farmegg Products owns a tract of land in Humboldt County, Iowa, outside of any city or town. Farmegg proposes to construct two poultry houses on the tract, and the buildings will have no other function. Each building will be 40 by 400 feet in size. In each building, 40,000 newly-hatched chicks will be placed and raised to 22-weeks of age. The birds, as egg layers, will then be placed in other buildings, which are not involved in this litigation. The chicks will be kept inside the two buildings until shipped to the laying houses. The two buildings will contain equipment to feed and water the chicks and to remove manure, which will be hauled away. Crops will not be grown on the premises.

Farmegg's difficulty is that the county zoning ordinance requires buildings to be set back 200 feet from the highway, and Farmegg's tract is not large enough to permit that much setback. But the statute under which the ordinance was adopted exempts buildings used for agricultural purposes, and Farmegg claims its buildings will be within the exemption.

Two main types of zoning exemptions exist in this respect, a narrower exemption for "farming" and a broader one for "agriculture". Compare Chudnov v. Board of Appeals, 113 Conn. 49, 154 A. 161, with Moulton v. Building Inspector, 312 Mass. 195, 43 N.E.2d 662. In keeping with our traditions as an agricultural state, our legislature adopted the broader exemption in § 358A.2, Code, 1971:

> No regulation or ordinance adopted under the provisions of this chapter shall be construed to apply to land, farm houses, farm barns, farm out-buildings *or other buildings, structures, or erections which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used.* * * * (Italics added.)

Although "farming" means tilling the soil, it also includes incidental activities such as raising livestock and feeding the livestock hay and grain produced. Black's Law Dictionary (4th Ed.). "Agriculture," however, is a generic term. It includes tilling the soil, but it also means animal husbandry independently. Thus "agriculture" is not defined as tilling the soil *including* animal husbandry, as farming ordinarily is; it means "cultivating the soil, harvesting crops, *and* raising livestock". Webster's Third New International Dictionary (italics added). As stated regarding the zoning ordinance involved in Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 266, 182 A.2d 692, 695:

> Clearly, the word "agriculture" therein does not mean only the tilling of the soil. The raising and housing of turkeys

is well within the reasonable meaning of the term. It is significant that the term "agriculture" was used and not "farming," which might well impose a far different connotation.

Likewise, where the zoning exemption was for "farms, greenhouses, nurseries and truck gardens," the court said in Town of Lincoln v. Murphy, 314 Mass. 16, 21, 49 N.E.2d 453, 456:

> An exemption for agricultural purposes is much broader than one for "farms, greenhouses, nurseries and truck gardens."

See also cases from other fields of law: Crouse v. Lloyd's Turkey Ranch, 251 Iowa 156, 162–163, 100 N.W.2d 115, 119 (workmen's compensation case—"We think the holding that the defendant was engaged in two businesses: one, *the agricultural pursuit of raising and marketing turkeys and other poultry*, and the other, that of operating a packing plant, is fairly warranted by the record." Italics added); Franklin v. McCoy, 234 Ark. 558, 353 S.W.2d 166 (workmen's compensation—75,000 chickens raised, no feed produced or land tilled—held agricultural); Rocky Mountain Metropolitan Recreation District v. Hix, 136 Colo. 316, 319, 316 P.2d 1041, 1043 (recreation district—"the term 'agriculture' includes the rearing, feeding and management of livestock"); Department of Labor & Industries v. McLain, 66 Wash.2d 54, 401 P.2d 211 (industrial insurance—chicken raising much like case at bar, no land tilled—held, tilling of land not necessary for exemption).

The distinction between farming and agriculture is reflected throughout the zoning decisions—although courts seem to tighten the particular exemption when the enterprise is within an urban area. See Anno., 97 A.L.R.2d 702 at 704. Thus poultry or animal raising, without raising crops in any substantial amount, has generally been held not to be within an exemption for "farming". Chudnov v. Board of Appeals, 113 Conn. 49, 154 A. 161 (three acres solely for raising chickens in residential zone—not "farming"); Town of Lincoln v. Murphy, 314 Mass. 16, 49 N.E.2d 453 (sole purpose to raise 2,500 hogs in residential zone—not a "farm"); Colasuonno v. Dassler, 183 Misc. 904, 51 N.Y.S.2d 870 (raising chickens on two and one-half acres in residence zone—not a "farm"); Johnson v. Debaun, 206 Misc. 806, 135 N.Y.S.2d 217 (farrowing large quantities of pigs in residential zone—not a "farm"). But raising poultry or animals and also some crops, although the crops are not fed to the livestock, has been held to be farming. Winship v. Inspector of Buildings, 274 Mass. 380, 174 N.E. 476 (1,000-bird chicken house plus 125 apple trees and five or six acres of vegetables—held a "farm"). But cf. Stout v. Mitschele, 135 N.J.L. 406, 52 A.2d 422 (dairying discontinued and horse raising begun—held "farming"); De Benedetti v. River Vale Township, 21 N.J.Super. 430, 91 A.2d 353 (enlarged chicken house alone—exempt under "any type of farming").

On the other hand, raising and keeping poultry and animals has been held within the meaning of the term "agriculture" in zoning cases whether or not crops are produced. Board of County Comm'rs of Johnson County v. Brown, 183 Kan. 19, 23, 325 P.2d 382, 386 ("It may be said without equivocation that the raising of canary birds is similar to the raising of chickens, or other poultry, which is commonly regarded as an agricultural pursuit."); Carp v. Board of County Comm'rs, 190 Kan. 177, 179, 373 P.2d 153, 155 (raising 2,500 hogs annually in $25,000 hog house—"We shall have to agree with Dr. Aubel of Kansas State that in Kansas, agriculture includes animal husbandry—the raising and feeding of livestock."); Mentor Lagoons, Inc. v. Zoning Board of Appeals, 168 Ohio St. 113, 151 N.E.2d 533 (horse raising—within exemption for "agriculture"); Fidler v. Zoning Board of Adjustment, 408 Pa. 260, 182 A.2d 692 (raising large numbers of turkeys off the ground and growing only enough

feed for a small fraction of them—within exemption for "agriculture"). In the Fidler case the court said:

> Likewise, the fact that only a relatively small quantity of the necessary feed will be cultivated on the property is not conclusive. If this concept were correct, an ordinary dairy farm would be precluded if it purchased the necessary needs of the stock from outside sources. (408 Pa. at 266, 182 A.2d at 695.)

Cf. Moulton v. Building Inspector, 312 Mass. 195, 43 N.E.2d 662 (silo within exemption for "agricultural use" though no silage produced on premises).

Regarding a cattle feed lot, the court said this in Fields v. Anderson Cattle Co., 193 Kan. 558, 563–565, 396 P.2d 276, 280–281:

> In its commonly accepted sense the term "agriculture" includes the breeding, rearing and feeding of livestock in preparation for market. * * *
>
> Whether the owner of livestock fattens his cattle for market in the blue stem pastures of the Flint Hills or in feed lots where they are given more condensed rations, the preparation for market continues as an agricultural pursuit.
>
> We must conclude that the feeding of livestock for market is an agricultural pursuit and that the structures used in connection therewith are for agricultural purposes.

Our Iowa exemption goes beyond "farm" buildings and is not restricted to "farm" uses. It begins by providing that the zoning chapter shall not apply "to land, *farm* houses, *farm* barns, *farm* outbuildings"— but it does not stop there. The exemption adds *"or other* buildings, structures, or erections * * *."* Moreover, the exemption does not require that those improvements be used for farming purposes or even that they be on a farm. They are exempt if used "for *agricultural* purposes". (Italics added.) The sole purpose of the two buildings in question will be to raise poultry. Under the definitions and decisions of the term "agriculture," those two structures will be "buildings * * * for use for agricultural purposes" and thus within the exemption.

Defendants' contentions cannot withstand analysis. Defendants argue that the buildings are essentially commercial, not agricultural. But at this day "agricultural" and "commercial" cannot be divorced. Today's agriculture in Iowa *is* commercial. Today's farmer is essentially a businessman, often a very substantial one, engaged in a commercial enterprise. If poultry and egg production has taken on a commercial countenance, it is because agriculture has taken on that countenance.

Defendants seem to think that a chicken house, to be for an agricultural purpose, must be a small unheated structure housing a couple hundred hens, of the kind which was common in past years. But agriculture does not stand still, nor does the content of the term "agriculture". Needham v. Winslow Nurseries, Inc., 330 Mass. 95, 111 N.E.2d 453. Profit margins in agriculture have become so thin that innovation, mechanization, efficiency, and, often, bigness are essential to survival. Animal husbandry practices with cattle, hogs, and poultry are strikingly different from those of a generation ago. But changes in practices do not mean that the new animal husbandry is not agriculture. Nor is the size of the flock or herd determinative in a given case. Animal husbandry does not cease to be agriculture because the cattleman, hog man, or poultryman expands his operation to a point at which a profit can be realized.

Defendants seem to concede that mechanized poultry houses like these would be exempt from setback regulations if the poultryman also tilled some soil. But from a zoning standpoint, what difference can there be between poultry houses less than 200 feet from the highway when the poul-

tryman does not till the soil and identical poultry houses when the poultryman does till the soil? Defendants' basic difficulty here is that they are thinking in terms of "farming" rather than "agriculture".

Reliance is placed on Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672. All that case holds is that under the Fair Labor Standards Act, a separate enterprise which is not itself agricultural does not become agricultural by serving agriculture—in that case an irrigation ditch company which was not itself engaged either in land tillage or animal husbandry The United States Supreme Court has, however, given a very broad application to the word "agriculture" under FLSA. Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L. Ed. 1040. See also NLRB v. Strain Poultry Farms, Inc., 405 F.2d 1025 (5th Cir.).

Defendants' contentions really amount to policy considerations for the legislature. If that body believes modern mechanized livestock structures require special provisions, it can so provide. That is not for us to do even if we dislike big chicken houses. Our function is to give effect to the statutory words as they stand. Needham v. Winslow Nurseries, Inc., 330 Mass. 95, 99, 111 N.E.2d 453, 456 ("They are to be interpreted according to the common and approved usage of the language without enlargement or restriction.").

The first stage with poultry is the incubation stage in a hatchery plant; the last is the slaughtering stage in a processing plant. Between those stages poultrymen husband the chickens, raising them and keeping them for laying and breeding. That middle stage is clearly agricultural, and the buildings which house the poultry during that stage constitute structures "for use for agricultural purposes".

Finally, the question in exemption cases is not what a board of supervisors say a particular use is. The question is what the use really is, under the law. If under the law a use is agricultural, the statute grants

exemption. If a board of supervisors could obviate the agricultural exemption by the simple expedient of declaring an area suburban residential or similarly characterizing it, they could annul the statutory exemption by their own act.

The judgment should be reversed.