No. 42,839

FRED CARP, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF
THE COUNTY OF SEDGWICK, *et al., Appellees.*

(373 P. 2d 153)

Opinion filed July 7, 1962.

*Robert C. Foulston,* of Wichita, argued the cause and *George B. Powers,
Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Malcolm Miller, Robert N.
Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L.
Cordes* and *Robert L. Howard,* all of Wichita, were with him on the briefs for
the appellant.

*Thomas A. Bush,* of Wichita, argued the cause and was on the briefs for the
appellees.

*Warden L. Noe,* of Holton, filed a brief *amicus curiae* on behalf of the
Kansas Livestock Commission.

*Jay W. Scovel* and *Robert K. Scovel,* both of Independence, filed a brief
*amici curiae* for the Kansas Farm Bureau, the Montgomery County Farm
Bureau, the Wilson County Live Stock Association and the Agri-Business Coun-
cil of Independence.

The opinion of the court was delivered by

JACKSON, J.: In this appeal, the appellant as plaintiff in the court
below brought an action for declaratory judgment and injunctive
relief against the Sedgwick county board of commissioners and the
county zoning administrator to enjoin defendants from requiring
plaintiff to cease and desist from constructing buildings and operat-
ing a hog farm within the three-mile zoning belt of Wichita.

The lower court refused the relief prayed for by plaintiff and he
has appealed to this court.

The statute which provides the authority for the three-mile

zoning belt around cities in Kansas is found in G. S. 1961 Supp., 19-2927, *et seq.* In section 19-2929 we find the following provisions:

"For any or all of said purposes the county commissioners may divide the unincorporated territory into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act and, within such districts, they may regulate and restrict the erection, construction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations of one district may differ from those in other districts. *No regulations shall apply to the use of land for agricultural purposes nor for the erections or maintenance of buildings thereon as long as such buildings are used for strictly agricultural purposes."* (Emphasis added.)

The real question then in this appeal is whether plaintiff's hog raising and feeding operations come within the term "agriculture" and whether his proposed buildings were designed strictly for agricultural use.

For many years plaintiff owned and operated a farm just south of Wichita which must have been within the zoning belt. Highway No. 81 had cut through plaintiff's farm and therefore he purchased the new farm of 160 acres to the north of Wichita which was near the boundary of the zoning belt but was still zoned for residential purposes. It is said that this section is given over to agricultural pursuits and that two hog feeding farms are located nearer to Wichita than is plaintiff's quarter section.

At the trial, plaintiff testified that he was a 1918 graduate of Kansas State Agricultural College, now Kansas State University; that he had been a resident of Sedgwick county since 1912; that he was a graduate in animal husbandry and that he had raised hogs since 1918 except when he had been in the army and at school. He further testified that he had owned the two 80-acre tracts south of Wichita since 1936. He told of the scientific way of feeding and raising hogs and said he had constantly tried to improve his methods. He said also that he usually buys two groups of hogs a year, keeping each group 90 to 120 days before selling them. Thus for about six months of the year he has no hogs whatever. He said the most he has had was 2,000 hogs and that the very maximum would be 2,500. Because of the quality of his hogs, many of them go to anti-serum manufacturers but they are fed the same as hogs for butchering and, of course, serum hogs are also slaughtered for meat.

Dr. C. E. Aubel, professor of animal husbandry at Kansas State University was the next witness on behalf of plaintiff. The witness

testified definitely that animal husbandry is included within the term "agriculture." Dr. Aubel was followed by A. G. Pickett, who has been State Livestock Sanitary Commissioner for twelve years. Mr. Pickett testified especially as to the scientific methods used in the operation of plaintiff's farm.

All of the evidence in opposition to that of plaintiff was put on by the intervening defendants, who seem to be landowners in the vicinity of plaintiff's new farm. The burden of the testimony was that hog feeding was apt to be unsanitary and might well cause a loss of real estate values. We note that plaintiff had testified he was planning to build a twenty-five thousand dollar house opposite the only house on land adjoining plaintiff's farm.

It should be noted that defendant's evidence was not directly upon the point of whether plaintiff's hog operations were included within the term "agriculture." The zoning resolution of Sedgwick county is very careful to exclude agriculture from all prohibitions, and further the resolution defines agriculture as follows:

"AGRICULTURE: Includes farming, dairying, pasturage, apiculture, horticulture, viticulture, animal and poultry husbandry, and the sale of such products by one engaged in agriculture as herein defined."

It is elementary law that powers granted to municipal corporations are strictly construed, and this has been applied to the area of zoning. In *Julian v. Oil Co.*, 112 Kan. 671, 212 Pac. 884, the first paragraph of the syllabus reads as follows:

"Express legislative authority is necessary to give cities the power to create zones or restricted residence districts within a city whereby owners of lands therein shall be prohibited from constructing business houses in which to carry on legitimate lines of business."

See also, 8 McQuillin, Municipal Corp. sec. 25.58, p. 124.

From all that has been said, we would have difficulty in holding that plaintiff's business is not within the general realm of agriculture. The trial court held that the business was commercial in nature rather than agricultural. It is generally true that all agricultural products be they crops or livestock are raised and kept until ready for sale. Crops are often thought to bring more by marketing them "on the hoof."

We shall have to agree with Dr. Aubel of Kansas State that in Kansas, agriculture includes animal husbandry—the raising and feeding of livestock. We cite the following cases from other states which seem to agree with the above holding. See: *Moulton v.*

*Building Inspector of Milton,* 312 Mass. 195, 43 N. E. 2d 662; *Davis v. Ind. Com.,* 59 Utah 607, 206 Pac. 267; *Rocky Mountain Dist. v. Hix,* 136 Colo. 316, 316 P. 2d 1041.

Having reached the above decision, the appeal herein would appear to require a reversal of the trial court's judgment. The defendant had no right under the statutes of this state nor the resolutions of the county to interfere with the plaintiff's agriculural business. Plaintiff is entitled to the injunctions prayed for in his petition.

The judgment of the district court is reversed, with directions to proceed in accord with the opinion herein. It is hereby so ordered.