No. 43,293

Dale Fields and Mrs. Dale Fields (Mrs. Helen A. Fields), Appellants, v. Anderson Cattle Company, Inc., a corporation, Blue Stem Feed Yards, Inc., a corporation, Cattlemen's Feed Lots, Inc., a corporation, Appellees.

(396 P. 2d 276)

Opinion filed November 7, 1964.

*Frank C. Sabatini,* of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Peter Caldwell, William G. Haynes* and *Roscoe E. Long,* all of Topeka, and *George L. Allred,* of Emporia, were with him on the briefs for the appellants.

*Glenn D. Young, Jr.,* of Wichita, and *Russ B. Anderson,* of Emporia, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Ralph M. Hope, Ronald M. Gott* and *Edward H. Graham,* all of Wichita, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This was an action to recover permanent damages for injury to real estate resulting from the operation of livestock feed lots as a continuing nuisance, and for a permanent injunction enjoining the further operation of the feed lots as a nuisance.

The pertinent facts necessary to a determination of the limited issues on appeal may be briefly summarized.

The plaintiffs, husband and wife, purchased a home consisting of three acres located in McClaskey's Subdivision, fronting on Prairie Avenue, about ¼ mile west of the city limits of Emporia,

Kansas. The purchase was made in 1957. At that time Anderson Cattle Company operated a feed lot one-half mile north of the home site and one block east of Prairie Avenue which was separated and hidden from the home site by a graded railroad track on the south of the Anderson feed lot. The Atchison, T. & S. F. Rly. Co. had two cattle barns located a fourth of a mile to the north of plaintiffs' home and 4/10ths of a mile east of Prairie Avenue. Occasionally when the wind was in the right direction the plaintiffs would get a whiff of odor from the Anderson feed lot but the same was not annoying to plaintiffs nor did it damage or diminish the value of their property. In the latter part of 1959, the defendant, Cattlemen's Feed Lot, purchased five suburban tracts consisting of approximately 40 acres which were located to the north and adjacent to the plaintiffs' home and constructed feed lots for the feeding of large numbers of cattle. At approximately the same time in 1959, the defendant, Blue Stem Feed Yards, purchased land east of Prairie Avenue and the two barns owned by the Atchison, T. & S. F. Rly. Co. and converted the same into an intensified area for the feeding of large numbers of cattle and great numbers of sheep. The Blue Stem property is located directly north of the property purchased by Cattlemen's Feed Lot. During the same period of time the Anderson Cattle Company expanded their lots one block to the east so that their pens were fronting on Prairie Avenue and expanded their lots ¼th mile to the west. Since the two new feed lots commenced operations and the expansion of the Anderson lots, up to the date of the trial, there have been up to 15,000 head of cattle and 12,000 head of sheep fed in the area. As a result plaintiffs have been subjected to intense odors and flies which have resulted in a nuisance and diminished the market value of plaintiffs' home.

The plaintiffs brought an action against the defendants, the owners of the feed lots, alleging in their amended petition:

"That as a direct and proximate result of the operation of said feed lots and their knowledgable concurrent acts by the respective defendants above named, as hereinbefore described, the defendants, and each of them, have thereby created a continuing and permanent nuisance against the plaintiffs' property and will continue to be a nuisance until abated."

and requesting the following relief:

"WHEREFORE, the plaintiffs pray for judgment against the defendants, jointly and severally, in the amount of $9,000.00; for a permanent injunction enjoining further operation of the defendants' respective feed lots as a nuisance; that the defendants' operations are in violation of the Lyon County Zoning Ordi-

nance, 1956, and should be enjoined, that the defendants' special permits are invalid and issued without proper authority, for the costs of this action and for such further relief as the Court deems just and equitable."

The issues were framed, the trial court having struck from the original petition plaintiffs' alleged claim for damages resulting from pain, suffering and mental anguish, and the case was tried to a jury.

At the close of the plaintiffs' evidence, the trial court sustained a demurrer to the claim for damages against Anderson Cattle Company but took the demurrer to the claim for injunctive relief under advisement. At the close of all the evidence, Anderson Cattle Company's demurrer to plaintiffs' evidence was sustained in its entirety.

The jury answered special questions in which it found that the defendant, Blue Stem Feed Yards, Inc., had used its property so as to unreasonably pollute the air in and around plaintiffs' property with foul, noxious and offensive odors, but to a lesser degree than the defendant, Cattlemen's Feed Lot, Inc., because of the distance from plaintiffs' property.

The jury returned a verdict in favor of the plaintiffs for damages caused by the continuing nuisance in the amount of $4,500. The amount was assessed $3,000 against the Cattlemen's Feed Lot, Inc., and $1,500 against the Blue Stem Feed Yards, Inc. No complaint is lodged in this appeal against the verdict so rendered.

The trial court made findings of fact and conclusions of law as to the injunctive feature of the case and concluded that the defendants, Blue Stem Feed Yards, Inc. and the Cattlemen's Feed Lots, Inc., should be restrained and enjoined from operating their feed lots under their existing maintenance procedure. It granted the defendants one year to abate the nuisance in accordance with the court's alternative abatement conditions. On June 20, 1963, the court on its own motion, called a hearing to determine whether the defendants, Cattlemen's Feed Lots, Inc. and Blue Stem Feed Yards, Inc., had complied with the abatement order. It found that the alternative abatement conditions had been complied with and no permanent injunction was entered.

The plaintiffs have appealed. However, they would materially restrict the questions to be reviewed and the result of the appeal. Appellants state:

"These appellants do not quarrel in any respect with the jury verdict, the Answers to Special Questions or the Findings of Fact and Conclusions of Law

entered by the Court. The appellants do not request and this appeal should not be inferred as a request for a new trial insofar as the verdict of the jury and the Findings of Fact and Conclusions of Law entered by the Court are concerned.

"The appellants, however, do complain and this appeal is brought for the purpose of determining (1) whether the Court erred in sustaining Demurrer of Anderson Feed Lot and directing a verdict in its favor, (2) whether the Court erred in striking as elements of damages, pain, suffering and mental anguish, (3) whether the Court erred in failing to enter a permanent injunction, and denying appellants an adequate hearing on issue of abatement, a denial of due process, and (4) whether the Court erred in ruling that the Lyon County Zoning Ordinance does not apply to the defendants."

We will consider the questions.

Did the court err in sustaining the demurrer of Anderson Cattle Company to appellants' evidence and directing a verdict in its favor?

The appellants call our attention to the rule stated in *Turner v. Kent,* 134 Kan. 574, 575, 7 P. 2d 513 as follows:

" 'If separate and independent acts of wrongdoers combine to produce a single injury, each is responsible for the result, although the wrong of one alone might not have produced the result." (*Gooch v. Gooch,* 108 Kan. 416, syl. ¶ 3, 195 Pac. 874. See, also, *Farmers Grain Co. v. Atchison, T. & S. F. Rly. Co.,* 120 Kan. 21, 245 Pac. 734.)"

and contend that although the odor caused by the Anderson Cattle Company might not have been sufficient standing alone to have created a nuisance, it did contribute to the odors created by the other feed lots which created the nuisance. We have no quarrel with appellants' statement of the law. However, we are inclined to agree with the trial court that appellants' evidence did not tend to prove any liability on the part of the Anderson Cattle Company.

The testimony was to the effect that the Anderson Cattle Company pens were built up to Prairie Avenue in the fall of 1955, and completed in their present form in January or February, 1956. The pens were one-half mile north of appellants' home and north of an embankment constructed by the Atchison, T. & S. F. Rly. Co. Both appellants testified that the odor from the Anderson Cattle Company pens was not offensive and there was no offensive odor until 1959, when the Cattlemen's Feed Lot and Blue Stem Feed Yard pens were constructed directly north of their property.

We must conclude the trial court did not commit error in sustaining the Anderson Cattle Company's demurrer to appellants' evidence.

We must also conclude that the trial court did not err in striking as elements of damages pain, suffering and mental anguish.

The abstract does not contain the original petition, the motions or the trial court's order striking the alleged elements of damages. The only information supplied by the abstract on the question is the following statement:

"The plaintiffs filed an action against the three defendants and among other items as a result of the nuisance created by the defendants alleged damages for pain, suffering and mental anguish in the amount of $15,000.

"Each of the defendants moved the Court to strike from the Petition the allegations of pain, suffering and mental anguish on the basis that they were not recoverable items of damage. The Court sustained the motions of each of the defendants and ordered the plaintiffs to strike the element of damage of pain, suffering and mental anguish. The plaintiffs proceeded to file an Amended Petition which is abstracted herein."

The appellees inform us of the nature of the instruments challenging the allegations of special damages as follows:

". . . The defendant Blue Stem Feed Yards, Inc., moved the court to strike from the petition the allegations of pain, suffering and mental anguish on the grounds that there was an improper joinder of causes of action and the court sustained said motion to strike. The court further sustained the demurrer of Cattlemen's on the ground that several causes of action were improperly joined."

Insofar as appellants claimed damages for injuries to their respective health and mental well being the claims are separate, distinct and necessarily personal to each other. Each appellant is concerned only with recovering damages for his own personal injuries without regard to those sustained by the other. The claims on which the causes of action so united are based do not affect all the parties to the action and their joinder is prohibited by G. S. 1949, 60-601.

The question was before this court in *Watkins v. City of El Dorado*, 183 Kan. 363, 327 P. 2d 877, and it is stated on page 367 of the opinion:

"Thus we come to the question whether appellees may unite in one joint cause of action claims for damages for injuries to their respective health and well being. It may be added that with respect to such question we have no difficulty in concluding the involved claims are separate, distinct and necessarily personal to each appellee. In other words conceding appellees' complaints, limited as heretofore indicated, against the appellant in the second cause of action are identical, the fact remains that each appellee is concerned only with recovering damages for his own personal injuries without regard to those sustained by the other. Indeed in this connection it should be pointed

out that in their brief, and notwithstanding inconsistent arguments to the contrary, appellees expressly concede 'the instant case is one for permanent damages to land, as distinguished from buildings and/or crops, etc., joined with an action for personal injuries.' Under such conditions and circumstances there can be no doubt that this court, in construing the force and effect to be given the provisions of G. S. 1949, 60-601, and earlier provisions of our code of civil procedure of like import, has long held that causes of action are improperly joined and subject to a demurrer based on that premise."

We now come to appellants' contention that the Lyon County 1956 Zoning Regulations apply to and cover feed lots and that the trial court erroneously concluded that the zoning regulations do not apply to the use of land and the erection of buildings for the purpose of feeding livestock because such use is strictly for agricultural purposes.

In 1956, the Lyon County Zoning Ordinance was adopted which provided for heavy industrial district regulations in the following language:

". . . That no building or occupancy permits shall be issued for any of the following uses until and unless the location of such use shall have been approved by the Board of County Commissioners at the report by the Lyon County Planning Commission."

Twenty-one industrial uses are then listed including "stock yards or slaughter of animals."

The appellants contend that the enterprise carried on by the appellees was included in the term "stock yards or slaughter of animals" and that therefore permits were required under the zoning ordinance. The appellees contend that the Lyon County Zoning Regulations were adopted pursuant to G. S. 1961 Supp., 19-2927 *et seq.* Section 19-2929 specifically provides in part:

". . . No regulations shall apply to the use of land for agricultural purposes nor for the erections or maintenance of buildings thereon as long as such buildings are used for strictly agricultural purposes. . . ."

Appellees further contend that the Lyon County Commissioners omitted feed lots from the list of uses set forth in the regulations pertaining to the area zoned as "heavy industrial district" because they were agricultural enterprises and so exempt from the zoning ordinance by the enabling statute.

The controversy on this point may be simply stated: is the operation of livestock feed lots an industrial or an agricultural enterprise?

In its commonly accepted sense the term "agriculture" includes the breeding, rearing and feeding of livestock in preparation for

market. The preparation of farm products for market is the dominating purpose of the agriculturalist.

Whether the owner of livestock fattens his cattle for market in the blue stem pastures of the Flint Hills or in feed lots where they are given more condensed rations, the preparation for market continues as an agricultural pursuit.

In 3 C. J. S., Agriculture, § 1, page 366, it is stated:

"It has been said that agriculture 'includes at once the science or art and process of supplying human wants by raising products of the soil and by associated industries.' Accordingly, therefore, it may include not only the tillage of the soil and the cultivation of crops, but also the rearing and feeding of all kinds of farm livestock, . . ."

In *Dill v. Excel Packing Co.*, 183 Kan. 513, 331 P. 2d 539, this court considered the operation of a cattle feed lot an agricultural pursuit in stating at page 525 of the opinion:

". . . In such an area plaintiffs cannot complain that legitimate *agricultural pursuits* are being carried on in the vicinity, nor can plaintiffs, having chosen to build in an agricultural area, complain that the agricultural pursuits carried on in the area depreciate the value of their homes. . . ." (Emphasis ours.)

This court passed directly on the question in *Carp v. Board of County Commissioners*, 190 Kan. 177, 373 P. 2d 153, where it is held in the second paragraph of the syllabus:

"In section 19-2929 of G. S. 1961 Supp., agriculture is removed from the power of the municipal corporation to zone, and within the term 'agriculture' is included animal husbandry including the feeding of hogs on a 160 acre farm."

In the Carp case the feeder was engaged in the purchase and feeding of hogs for slaughter. In the case now before us for determination the record does not disclose the ownership of the livestock or the manner in which the ownership was acquired. The record does disclose that the livestock was being fed for slaughter. In the Carp case it is stated at page 179 of the opinion:

"From all that has been said, we would have difficulty in holding that plaintiff's business is not within the general realm of agriculture. The trial court held that the business was commercial in nature rather than agricultural. It is generally true that all agricultural products be they crops or livestock are raised and kept until ready for sale. Crops are often thought to bring more by marketing them 'on the hoof.'

"We shall have to agree with Dr. Aubel of Kansas State that in Kansas, agriculture includes animal husbandry—the raising and feeding of livestock. We cite the following cases from other states which seem to agree with the above holding. See: *Moulton v. Building Inspector of Milton*, 312 Mass. 195,

43 N. E. 2d 662; *Davis v. Ind. Com.,* 59 Utah 607, 206 Pac. 267; *Rocky Mountain Dist. v. Hix,* 136 Colo. 316, 316 P. 2d 1041."

We must conclude that the feeding of livestock for market is an agricultural pursuit and that the structures used in connection therewith are for agricultural purposes.

The last contention to be considered presents a more serious problem. The appellants contend that the trial court so conducted the hearing on the question of whether the nuisance had been abated as to prejudice their rights and deny them due process of law. What transpired at the hearing is not in dispute.

On June 20, 1963, the court on its own motion, called a hearing in regard to whether or not appellees, Blue Stem Feed Yard, Inc. and Cattlemen's Feed Lot, Inc., had complied with the court's abatement order entered June 29, 1962. The appellants were present in person and with witnesses and desired to cross-examine witnesses called by the court to show that the appellees had not changed their operation since the trial and had not complied with the abatement order. The court refused the appellants an opportunity to present evidence to the court or to cross-examine the witnesses with whom the court had discussed the matter and who were present in the courtroom. The following discussion took place:

"THE COURT: Mr. Anderson, maybe you can help the Court. This Court made Findings of Facts and Conclusions in this case on June 29, 1962. The Court found the defendants were maintaining a nuisance and directed the defendants to comply with certain abatement conditions by June 1, 1963. The defendants took an appeal to the Supreme Court. After that time the Court informed the attorneys for the defendants it would not be necessary for them to ask for an order staying execution of any orders which the Court might make enjoining the defendants in their operations until the Court had determined whether or not the defendants had substantially complied with the abatement conditions.

"The Court has relied upon information furnished to it by the Lyon County Sanitarian, I believe that is his correct title, and also the Kansas State Board of Health, concerning whether or not the defendants have acted in good faith in attempting to comply with the abatement conditions. The Court has been furnished with written reports by both the Lyon County Sanitarian and Mr. Shull of the State Board of Health. The Court also has personally observed the operation of the feed lots of the defendants.

"The reports most recently received were from Mr. Shull.

"I had a report previously from Mr. Kunish which I will not read.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"It is the opinion of the Court that the defendants have substantially com-

plied with the conditions of the Court with one exception and that has to do with this matter of drainage.

. . . . . . . . . . . . . .

"Mr. Sabatini: May I inquire whether or not you are going to permit the plaintiffs in this case to be heard?

"The Court: No, that is the reason I stated at the outset the Court was concerned only with the objective furnished by the County Sanitarian and the State Board of Health. The Court feels there has been a substantial compliance with its conditions."

The appellees attempt to support the trial court's procedure stating:

"There is every indication that the trial court used sound judicial discretion in arriving at the conclusion that there had been substantial compliance with the abatement conditions prescribed. In *Smith v. City of Kansas City*, 167 Kan. 684, 208 P. 2d 233, at page 689 it was said:

" 'An injunction, temporary or permanent, ordinarily may not be sought as a matter of strict right. Its granting or refusal ordinarily rests in the sound discretion of the court under all the facts and circumstances of the particular case. (*Olmstead v. Koester, Treasurer*, 14 Kan. 463; *Railway Co. v. Shriver*, 101 Kan. 257, 166 Pac. 519; *Atchison, T. & S. F. Rly. Co. v. Hamilton*, 130 Kan. 685, 689, 288 Pac. 560; *Emporia Loan N Inv. Co. v. Dailey*, 141 Kan. 845, 44 P. 2d 288; *Allen W. Hinkel Dry Goods Co. v. Wichison I. Gas Co.*, 64 F. 2d 881.)' "

The suggestion has no application to the question before us. The trial court had found that the operation of the feed lots under existing conditions constituted a nuisance which should be enjoined. The court gave the appellees the alternative of abating the nuisance. It exercised its discretion when it found that the nuisance should be enjoined unless abated. Whether the alternative was complied with and the nuisance abated was not a matter of discretion but a question of fact.

Under the American system of jurisprudence due process requires a reasonable opportunity to be heard where a question of fact affecting a property right is to be determined.

". . . A fundamental requisite of due process of law is an opportunity to be heard. . . ." (*Gilbert v. Mathews*, 186 Kan. 672, 684, 352 P. 2d 58.)

". . . As so applied, due process of law has been variously held to mean a law which hears before it condemns, which proceeds on inquiry, and renders judgment only after trial; ordinary judicial proceedings in court; law in its regular course of administration through courts of justice, in accordance with the fundamental principles of free government, and securing to the individual the benefit of those fundamental rules of the common law by which judicial trials are governed; a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the

protection and enforcement of private rights; . . ." (16A C. J. S., Constitutional Law, § 567, p. 542.)

"It was a maxim of the common law that 'no man should be punished without an opportunity of being heard.' Hence, no one may be legally divested of his property unless he is allowed a hearing before an impartial tribunal, where he may contest the claim set up against him, and be allowed to meet it on the law and facts and show if he can that it is unfounded. He must be given his 'day in court.' . . ." (16 Am. Jur. 2d, Constitutional Law, § 569, p. 973.)

It will be understood that we are not passing on the question as to whether or not the nuisance has been abated. We are only holding here that the question should not be determined without giving the parties a reasonable opportunity to be heard.

The judgment and rulings in the trial on the merits are affirmed. The judgment of the trial court on the question of the abatement of the nuisance is reversed with instructions to grant the parties a reasonable opportunity to be heard before making a final determination of the question.

APPROVED BY THE COURT.

FATZER, J. dissenting: In my opinion, the record is sufficient to sustain the conclusion that the feeding operations conducted by the three feed lots in question are purely commercial enterprises, where literally thousands of sheep and cattle belonging to buyers, brokers and owners, are fed and fattened annually by the defendants for profit, and in no sense may this be described as an agricultural pursuit. The feed lots in question are 700 feet from the city limits of Emporia, *within the three mile zoning area of the city,* and are bounded on the north and east by commercial and residences, on the south by suburban, and on the west by commercial and farming. Clearly, the use of the land and buildings in question is in violation of the Lyon County 1956 Zoning Regulation, and the district court erred in concluding otherwise.

The case of *Carp v. Board of County Commissioners,* 190 Kan. 177, 373 P. 2d 153, is not in point. There, the plaintiff was feeding his *own* hogs for the market on his *own* farm. Likewise, the case of *Dill v. Excel Packing Co.,* 183 Kan. 513, 331 P. 2d 539, is not helpful to the defendants. There, the feed lot was six miles from the city limits of Wichita, outside the three mile zoning area. The area was bounded completely on all sides by farms, with the exception of a few suburban tracts. In the opinion it was said:

"The prime factor which gives us pause in resolving this case is the location at which the operation of the feed lot is conducted.  .  .  .

"Obviously, the feeding of livestock *in any number* within the limits of a residential area would be a nuisance.  In fact, ordinances have been passed by cities to prevent the maintenance of poultry and livestock within the city limits.  What may be a nuisance in one location and subject to abatement may not be a nuisance, however, in another location.  .  .  .

".  .  . The area being *primarily agricultural*, any opinion reflecting the value of such property must take this factor into account.  *The standards affecting the value of residence property in an urban setting, subject to zoning controls and controlled planning techniques, cannot be the standards by which agricultural properties are judged.*"  (l. c. 524, 525.)  (Emphasis supplied.)

I would reverse the judgment and permanently enjoin the three defendants from conducting their feeding operations in violation of the zoning regulation.