(884 P.2d 1159)
No. 71,018

DENNIS W. WEBER AND PATRICIA L. WEBER, *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF FRANKLIN COUNTY, KANSAS, *Appellant*.

Opinion filed November 18, 1994.

*John Wilcox, Jr.*, legal intern, and *Lawrence M. Wright*, county attorney, for appellant.

*Wendell J. Barker*, of Ottawa, for appellee.

Before BRISCOE, C.J., LARSON, J., and JAMES L. BURGESS, District Judge, assigned.

BURGESS, J.: The Board of County Commissioners (BOCC) of Franklin County appeals from an order issued by the trial court enjoining the county from enforcing its zoning regulations against Patricia and Dennis Weber.

The Webers raise greyhounds for racing on property they own and live on in rural Franklin County. There are approximately 25 greyhounds on their land. The Webers race the dogs in Colorado and Texas but do not sell or board dogs for a fee.

In June of 1993, the Zoning and Planning Administrator notified the Webers they were violating the zoning regulations of Franklin County by operating a dog kennel in an area zoned as an agricultural district. The Administrator informed the Webers they would need a zoning variance for an agricultural-transitional district and a conditional use permit in order to operate a dog kennel. The BOCC denied the Webers' request for a zoning variance, following the recommendation of the planning commission.

The Webers then requested a permanent injunction against the enforcement of the county's zoning regulations. After hearing testimony from Dennis Weber and the Administrator, the trial court reversed the BOCC's decision and enjoined the BOCC from interfering with the Webers' use of the property for raising greyhounds.

The trial court issued the following findings of fact and conclusions of law:

"1. The mere keeping of greyhounds on land owned by the [Webers] does not constitute the operation of a dog kennel as that term is used in Franklin County zoning regulations. Therefore, no conditional use permit and no rezoning is necessary for the activities of the [Webers] on their premises as those activities were described in the testimony presented to the court.

"2. That any attempt by the defendant to arbitrarily limit the number of dogs which may be owned and kept by a resident of the county is an unconstitutional exercise of police power under Sec. 1 of the Bill of Rights of the Kansas Constitution. [Citation omitted.]

"3. That the raising and keeping of greyhounds for racing or sale constitutes the use of land for an agricultural purpose as contemplated by K.S.A. 12-758, K.S.A. 19-2908, K.S.A. 19-2921 and K.S.A. 19-2929, and may not be regulated by zoning. [Citations omitted.]"

On appeal, the BOCC does not dispute the trial court's findings of fact or the first two conclusions of law. This leaves the trial court's decision that the raising and keeping of greyhounds for racing or sale is an agricultural purpose as the only unresolved issue. The BOCC agrees the Webers are not technically operating a kennel as that word is defined in the regulations. As a result, our determination on appeal as to the issue appealed will not affect the trial court's ruling concerning the Webers. However, resolution of the issue becomes applicable to others who may be

found operating a kennel in the county without the proper use permits and is applicable to the Webers should they begin to sell dogs or board them for a fee. We reverse the trial court's ruling as to the third conclusion of law.

The BOCC argues that raising and keeping greyhounds for racing or sale is not an agricultural use of the land. Consequently, the county contends it may regulate this use through its zoning regulations. The Webers argue that raising greyhounds is an agriculture use of the land and, thus, is outside the regulatory zoning power of the county.

The standard of review concerning zoning matters is stated in *VanGundy v. Lyon County Zoning Board*, 237 Kan. 177, 179, 699 P.2d 442 (1985) (citing *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 [1980]).

"(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change zoning.
"(2) The district court's power is limited to determining
(a) the lawfulness of the action taken, and
(b) the reasonableness of such action.
"(3) There is a presumption that the zoning authority acted reasonably.
"(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.
"(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.
"(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.
"(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.
"(8) An appellate court must make the same review of the zoning authority's action as did the district court."

The issue here involves an interpretation of county zoning statutes. "Interpretation of statutes is a question of law." *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). The appellate court's review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Kansas courts and the legislature have not definitively answered the question presented by this appeal. However, several cases

have considered whether related activities fall within the term "agricultural purposes." Additionally, the Kansas Attorney General has issued two opinions on this issue.

Counties are given general zoning authority "for the protection of the public health, safety and welfare." K.S.A. 12-741(a). This authority shall not apply "to the use of land for agricultural purposes" or to buildings erected on that land for agricultural purposes. K.S.A. 1993 Supp. 19-2908. This restriction on zoning authority is applicable to townships (K.S.A. 1993 Supp. 19-2908), counties (K.S.A. 1993 Supp. 19-2921), and city planning commissions (K.S.A. 12-715b; K.S.A. 12-758[b]). The purpose of the restriction on zoning authority is to favor agricultural uses and farmers. *VanGundy*, 237 Kan. at 181 (citing *Blauvelt v. Board of Leavenworth County Comm'rs*, 227 Kan. 110, 605 P.2d 132 [1980]). The legislature was attempting to "spare the [family] farmer from governmental regulations and not to discourage the development of this state's farm industry." 237 Kan. at 182. With this purpose in mind, we turn to the following cases that have considered what constitutes "agricultural purposes" as used in the zoning statutes.

In *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P.2d 382 (1958), it was noted that the raising of canaries was similar to the raising of chickens which is commonly regarded as an agricultural pursuit.

Hogs were the subject in *Carp v. Board of County Commissioners*, 190 Kan. 177, 178-80, 373 P.2d 153 (1962). There, the court found that agriculture includes animal husbandry, which is the raising and feeding of livestock. The court held that Carp's hog raising and feeding operation was within the "general realm of agriculture" and therefore the county could not interfere with Carp's agricultural business.

In *Fields v. Anderson Cattle Co.*, 193 Kan. 558, 563-65, 396 P.2d 276 (1964), the court considered whether the operation of livestock feedlots was an industrial or an agricultural enterprise under G.S. 1949, 19-2929 (1961 Supp.). The court first noted that agriculture includes "the breeding, rearing and feeding of livestock in preparation for market. The preparation of farm products

for market is the dominating purpose of the agriculturalist." The court held "the feeding of livestock for market is an agricultural pursuit."

A farmhouse and accessory buildings were determined to be exempt from zoning regulations pursuant to K.S.A. 19-2921 in *Blauvelt v. Board of Leavenworth County Comm'rs*, 227 Kan. 110, 114, 605 P.2d 132 (1980). The court held that the county's zoning authority did not reach "the 40 acres of admitted agricultural land . . . occupied by the farmer-owner who intends to live and carry on 'agricultural purposes' upon the property."

In *VanGundy v. Lyon County Zoning Board*, 237 Kan. 177, a farmer was blasting and excavating his land in order to build a pond for recreation and irrigation purposes. He sold the excavated rock to third parties. The court held that VanGundy was blasting rock to excavate a pond for agricultural purposes and was therefore exempt from county zoning regulations under K.S.A. 19-2921.

Finally, in *Corbet v. Board of Shawnee County Comm'rs*, 14 Kan. App. 2d 123, 783 P.2d 1310 (1989), we considered whether the proposed operation of a wildlife hunting preserve was an agricultural use. Since the Corbets had planted crops specifically for the purpose of providing wildlife food sources, the operation of a hunting preserve was found to be an agricultural use of the land.

The Kansas Attorney General has issued two opinions on the issue in this case: Att'y Gen. Op. No. 90-68; Att'y Gen. Op. No. 81-173. Both opinions concluded that greyhound operations were not agricultural uses and could be regulated through county zoning ordinances.

K.S.A. 2-3201 declares that the policy of Kansas is "to conserve and protect and encourage the development and improvement of farmland for the production of food and other agricultural products." Further, "agricultural activity" is defined as "the growing or raising of horticultural and agricultural crops, hay, poultry and livestock, and livestock, poultry and dairy products for commercial purposes." K.S.A. 2-3203(a). Although this statute was passed to provide protection from nuisance suits, it expresses the same pur-

pose as that exempting agricultural uses from county zoning authority. See *Corbet*, 14 Kan. App. 2d at 127. Therefore, using this definition, if dogs are considered livestock, the raising of dogs would be an agricultural activity.

Chapter 47 of the Kansas Statutes Annotated addresses livestock and domestic animals and contains several definitions of "livestock." For branding purposes, "livestock" means "cattle, sheep, horses, mules or asses." K.S.A. 47-414(b). For purposes of diseased stock and quarantine, the statutes regulate "cattle, calves, sheep, swine, horses, mules, goats, domesticated deer . . . or any other animal that may be used in the preparation of meat or meat products." K.S.A. 47-607(a). For public livestock market purposes, "livestock" means "cattle, swine, sheep, goats, horses, mules and domesticated deer and any other animal as deemed necessary by the commissioner." K.S.A. 47-1001(b).

For purposes of humane slaughter, "livestock" means "cattle, calves, sheep, swine, horses, mules, goats, aquatic animals, domesticated deer and any other animal which can or may be used in and for the preparation of meat or meat products." K.S.A. 47-1402(c). For feedlot purposes, "livestock" means "cattle, swine, sheep and horses." K.S.A. 47-1501(c). Dogs are not included under any Kansas statutory definition of livestock.

Dogs are generally regulated under the Kansas Animal Dealers Act, K.S.A. 47-1701 *et seq.* However, greyhounds are not covered by this Act, but instead are regulated under the Kansas Parimutuel Racing Act, K.S.A. 74-8801 *et seq.* Greyhounds, as defined in K.S.A. 74-8802(i), are subject to rules and regulations formulated by the Kansas Racing Commission.

In summary, the *Carp* decision held that agriculture includes animal husbandry which is the raising and feeding of livestock. In *Fields*, the court noted that agriculture includes "breeding, rearing and feeding of livestock in preparation for market." In *Corbet*, this court noted that agriculture involves the "utilization of the resources of the land for production of plants and animals." Kansas has not generally included dogs in the definition of livestock. The raising of dogs does not involve the utilization of the

resources of the land such as that considered in *Corbet* where crops were planted for feeding wildlife. Finally, the Webers' raising of greyhounds is not ancillary to an agricultural purpose as was considered in *VanGundy*. Based on our analysis of these decisions, we hold that in Kansas the raising of greyhounds is not an agricultural use of the land.

Three decisions from other jurisdictions considered nearly the same question. A dog breeding and kennel operation was not considered a farming activity in North Carolina. *Development Associates v. Board of Adjustment*, 48 N.C. App. 541, 269 S.E.2d 700 (1980), *cert. denied* 301 N.C. 719 (1981).

The Nebraska Supreme Court considered whether the operation of a dog kennel for stray dogs was "animal husbandry" in *City of Beatrice v. Goodenkauf*, 219 Neb. 756, 758, 366 N.W.2d 411 (1985), and found that statutory definitions of livestock did not include dogs. It held that the raising of dogs was not animal husbandry or an agricultural use of the land.

The Ohio Supreme Court reached the opposite result in *Harris v. Board*, 44 Ohio St. 2d 144, 148-50, 338 N.E.2d 763 (1975). This case involved breeding and raising of show dogs. The court found that dogs were domestic animals and breeding them fell under the definition of animal husbandry, a "branch of agriculture."

Using the language from cases which consider what is the "use of the land for agricultural purposes" together with various statutory definitions, we hold that dogs do not fall into this category. Kansas greyhounds are regulated by the Kansas Racing Commission. This removes these animals further from the definitions of livestock and agriculture. We hold that raising and keeping greyhounds for racing or sale is not an agricultural use of the land and is subject to the zoning authority of K.S.A. 12-741 *et seq.*

Reversed.