(133 P.3d 1283)
No. 94,598

SEWARD COUNTY, BY THE SEWARD COUNTY BOARD OF COMMISSIONERS, *Appellant*, v. OSCAR NAVARRO, VICTOR NAVARRO, and CATARINO HERNANDEZ, *Appellees*.

—

Opinion filed May 19, 2006.

*Daniel H. Diepenbrock,* of Miller & Diepenbrock, P.A., of Liberal, for appellant.

*J. Gregory Swanson,* of Swanson Law Office, of Liberal, for appellees.

Before GREEN, P.J., MALONE and BUSER, JJ.

MALONE, J.: The Board of Seward County Commissioners (County) appeals the district court's decision denying its petition to permanently enjoin Oscar Navarro, Victor Navarro, and Catarino Hernandez (Navarros) from operating a horse training facility on their property in Seward County. The County claims the district court erred in determining the Navarros' use of their property to train race horses constituted an agricultural purpose, thus exempting such use from the County's zoning regulations. The County also claims the district court erred in placing the burden on the County to establish whether the horse training facility was a preexisting use of the property. We conclude the Navarros' use of their property to train race horses did not constitute an agricultural purpose. We also conclude the burden should have been placed on the Navarros to establish whether there was a preexisting use of the property, and the case is reversed and remanded for a new trial on this issue.

## Factual and procedural background

In 1992, the Navarros acquired a 40-acre tract of land located on Bluebell Road outside of Liberal, Kansas, in Seward County. They used the land to breed, raise, and train horses. In 1992, the Navarros constructed a racetrack on the property. The track was approximately 300 yards long and was equipped with a 4-horse starting gate. The facility was used to train the horses to get out of the starting gate in a racing manner.

In 1997, the County adopted Resolution No. 97-23, which created and approved the first ever zoning and subdivision for Seward County. Under the new regulations, the Navarros' land was zoned as agricultural.

In February 2003, the Navarros graded out another racetrack west of the original track. The new track was 200 yards longer than the original. It was surrounded by metal railings on both sides and was equipped with a new starting gate. The Navarros later equipped the new track with loudspeakers and an announcer platform near the starting gate.

In March 2003, the Navarros applied to the Board of Zoning Appeals for Seward County (Board) for a special use permit to

operate a horse training track on their land. A public hearing was held on April 14, 2003. On May 13, 2003, the Board denied the Navarros' request for a special use permit. The Board concluded that "[a] horse-training track does not meet the definition of a permitted or special use . . . within the Agricultural Residential District" and was "not exempt from planning and zoning requirements" under Kansas statutes. The Navarros did not appeal the Board's decision.

Even after the permit was denied, the Navarros, on several Sunday afternoons, invited friends and family to their property to train their horses using the track. There was no wagering, concessions, or use of alcohol. The Navarros did not charge any admission or fee to use the track. On September 26, 2004, Deputy Scott Richardson responded to a call made by a woman who lived on Bluebell Road. When Richardson arrived on Bluebell Road, he observed a crowd of approximately 100-200 people on the Navarro property and there were horses racing on the track. Richardson spoke with Oscar Navarro and told him there was not supposed to be any training or racing on the track because the Navarros did not have a permit. Oscar told Richardson they could do whatever they wanted because it was his property.

On October 15, 2004, the County filed a petition for permanent injunction. The County claimed the Navarros were operating a horse training and racetrack facility in violation of County zoning and planning regulations. The County further claimed the Navarros had already been denied a special use permit by the Board and had not appealed the decision. The County contended the Navarros were bound by that decision. The County claimed the track also created a substantial traffic hazard and constituted a "public nuisance which should be abated by the Court upon the issuance of injunctions both temporary and permanent."

The district court conducted a trial and several witnesses testified for both the County and the Navarros. After hearing the evidence, the district court denied the County's petition for a permanent injunction. The district court determined the County had failed to prove that the Navarros' horse training facility was not an agricultural pursuit or that the Navarros' use of the land was not

for agricultural purposes. The district court also found the County had failed to prove that the Navarros were not training horses on their property prior to the adoption of the zoning regulations. The district court concluded the Navarros were not bound by the Board's decision denying the application for a special use permit because the Navarros were not required to have such a permit since the track was exempt from zoning regulations. Finally, the district court commented that the County's complaints about the racetrack were "in the nature of either a public or private nuisance. If the [County] feels aggrieved by these matters, [it] should address them in that light." The County timely appeals.

## Did the County pursue a proper remedy?

The County filed a petition for permanent injunction to stop the Navarros from using their land as a horse training facility. In both the petition for injunctive relief and the pretrial order, the County alleged the Navarros' use of their property constituted a "public and private nuisance" as well as a zoning violation. The Navarros filed no answer to the petition. In the pretrial order, the Navarros raised no defense that the County was seeking the wrong remedy or that the injunction should be denied because the County had an adequate remedy at law.

Pursuant to K.S.A. 2005 Supp. 12-761(a), the County could have chosen to cite the Navarros for a zoning violation rather than seeking injunctive relief. This would have constituted a misdemeanor criminal action punishable by a fine and jail time. However, K.S.A. 2005 Supp. 12-761(b) also authorizes a city or county to maintain an action in any court of competent jurisdiction to enforce adopted zoning regulations and to abate nuisances maintained in violation thereof. Furthermore, K.S.A. 2005 Supp. 12-761(c) expressly authorizes a city or county to seek an injunction, in addition to other remedies, prohibiting a party from using land in violation of zoning regulations. The County chose to pursue this remedy.

At the conclusion of its memorandum decision, the district court commented that the County's complaints about the racetrack were "in the nature of either a public or private nuisance. If the [County] feels aggrieved by these matters, [it] should address them in that

light." We are unsure what the district court meant by this comment, especially in light of the fact that the pretrial order included a claim by the County that the Navarros' use of their property constituted a public and private nuisance. This was one of the reasons the County was seeking the injunction. Furthermore, although the County could have chosen to prosecute the Navarros in a misdemeanor criminal action for the alleged zoning violation, we do not believe such a criminal action would have constituted "an adequate remedy at law" preventing the County's attempt to seek injunctive relief. We conclude the County was within its statutory rights to file the petition for injunctive relief and there was nothing improper about the remedy the County pursued.

## Is training race horses an agricultural purpose within the meaning of zoning regulations?

The County claims the district court erred in determining the Navarros' use of their property to train race horses constituted an agricultural purpose, thus exempting such use from the County's zoning regulations. The County also claims the district court placed the burden on the wrong party to prove whether the horse training facility was a preexisting use of the property.

The interpretation of zoning statutes is a question of law which is subject to unlimited review. *Weber v. Board of Franklin County Comm'rs*, 20 Kan. App. 2d 152, 154, 884 P.2d 1159 (1994). While dependent upon the circumstances in each case, the determination of whether a landowner's use of property constitutes an agricultural purpose is also a question of law subject to unlimited review. *Miami County v. Svoboda*, 264 Kan. 204, 207, 955 P.2d 122 (1998).

Initially, we note the district court never made an affirmative finding that the Navarros' use of their property to train race horses constituted an agricultural purpose. Rather the district court determined the County failed to prove that the Navarros' horse training facility was not an agricultural pursuit or that the Navarros' use of the land was not for agricultural purposes. Nevertheless, this does not change our standard of review because the County takes no issue with any of the district court's factual findings. Our task on review is to apply the facts as determined by the district court

to the applicable zoning statutes to determine whether the Navarros' use of their property constitutes an agricultural purpose. This ultimate question is one of law subject to unlimited review. See *Svoboda,* 264 Kan. at 207.

Cities and counties are given general zoning authority for the protection of the public health, safety, and welfare. K.S.A. 12-741(a). However, this authority shall not apply to the use of land for agricultural purposes or to buildings erected on the land for agricultural purposes. See K.S.A. 12-758; K.S.A. 19-2908. The purpose of the agricultural use exception was to favor agricultural uses and farmers. *VanGundy v. Lyon County Zoning Board,* 237 Kan. 177, 181, 699 P.2d 442 (1985). The legislature was attempting to "spare the [family] farmer from governmental regulations and not to discourage the development of this state's farm industry." 237 Kan. at 182.

The Navarros focus much of their argument on their assertion that they are not conducting commercial horse racing on their property, but instead they are only using their property for the purpose of training race horses. Indeed, the district court never found the Navarros were conducting commercial horse racing on their property. The County is not disputing this on appeal. Instead, the issue is whether "the training of horses for racing purposes" constitutes an agricultural use of the land. The Navarros do not dispute the fact that they are using their land to train horses for racing purposes.

Several cases have considered what constitutes "agricultural purposes" as used in zoning statutes. In *Weber,* the landowners raised greyhound dogs for racing on their property. However, they did not sell or board the dogs for a fee. The county zoning administrator notified the landowners that their use of the property violated the zoning regulations. In response, the landowners filed an action requesting a permanent injunction against the enforcement of the zoning regulations. The district court granted the permanent injunction and enjoined the county from interfering with the landowners' use of the property for raising greyhound dogs.

This court reversed the district court, holding the raising and keeping of greyhound dogs for racing or sale was not an agricultural

use of the land and was subject to the zoning authority. The court found that dogs were not generally considered livestock. The court also noted the raising of dogs did not involve the utilization of the resources of the land. Finally, the court found that the raising of greyhounds was not ancillary to any traditional agricultural purpose. 20 Kan. App. 2d at 157-58.

The *Weber* court summarized the Kansas cases addressing whether a use of the land fell under the agricultural use exception. See 20 Kan. App. 2d at 155-58: *VanGundy*, 237 Kan. 177 (blasting rock to excavate a pond for agricultural purposes was exempt from zoning regulations); *Blauvelt v. Board of Leavenworth County Comm'rs*, 227 Kan. 110, 114, 605 P.2d 132 (1980) (a farmhouse and accessory buildings associated with land used for agricultural purposes was exempt from zoning regulations); *Fields v. Anderson Cattle Co.*, 193 Kan. 558, 563-65, 396 P.2d 276 (1964) (the feeding of livestock for market was an agricultural pursuit); *Carp v. Board of County Commissioners*, 190 Kan. 177, 178-80, 373 P.2d 153 (1962) (animal husbandry, which is the raising and feeding of livestock, is an agricultural pursuit); *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P.2d 382 (1958) (raising of canaries was similar to raising of chickens which is commonly regarded an agricultural pursuit); *Corbet v. Board of Shawnee County Comm'rs*, 14 Kan. App. 2d 123, 783 P.2d 1310 (1989) (operation of wildlife hunting preserve was agricultural use since the landowners had planted crops specifically for the purpose of providing wildlife food sources); see also *Svoboda*, 264 Kan. at 209-11 (landing field was exempt from zoning regulations because evidence supported agricultural use).

Under Kansas law, raising livestock is an agricultural activity. K.S.A. 2-3203(a); *Fields*, 193 Kan. at 563-65; *Carp*, 190 Kan. at 178-80. Horses are generally included in the definition of livestock. See, *e.g.*, K.S.A. 47-414(b); K.S.A. 47-1001(b); K.S.A. 47-1402(c); K.S.A. 47-1501(c). If the Navarros are simply raising or training horses on the property for agricultural pursuits, there is no question that the agricultural use exception would apply.

The key is determining whether the horses are being raised or trained for agricultural pursuits. In *Whitham v. Parris*, 11 Kan.

App. 2d 303, 307-08, 720 P.2d 1125 (1986), this court held a business that consisted of the boarding and training of show horses for a fee was not an agricultural pursuit in the context of the Kansas Workers Compensation Act. In reaching this determination, the court stated:

"In this state, where agriculture predominates the economy, an analysis incorporating the traditional meaning of agriculture, together with a general and specific consideration of the pursuit or business questioned, provides the necessary guidelines for a determination on a case by case basis as to whether the pursuit is essentially agricultural under the provisions of K.S.A. 1985 Supp. 44-505(a)(1)." 11 Kan. App. 2d at 306.

Similarly, in this case, the purpose for which the horses are being raised or trained on the property is the key to determining this issue. Even though horses are livestock, training horses to race does not fit within the "traditional meaning of agriculture" in Kansas. The Navarros' horse training facility is not being used for the production of crops or any other traditional farming venture. Horse racing is a recreational activity, as evidenced by the crowds of people who gather on the Navarros' property each Sunday. The activity tied to the livestock has gone beyond the "agricultural purpose" for which the exception was designed to protect. Training race horses does not fall under the legislature's purpose in granting the agricultural use exception to "spare the [family] farmer from governmental regulations and not to discourage the development of this state's farm industry." *VanGundy*, 237 Kan. at 182.

We hold the Navarros' use of their property as a facility to train race horses does not constitute an agricultural purpose within the meaning of Kansas zoning statutes and regulations. Accordingly, the Navarros' use of their property was subject to the County's zoning regulations adopted in 1997. The use of the property as a race horse training facility without a permit violated the County's zoning regulations.

### Was there a preexisting use?

The Navarros still have a potential defense to the County's request for injunctive relief based upon a preexisting use of their property. The Navarros purchased their land in 1992, and the ev-

idence is undisputed they have used the land to some extent as a horse training facility since that date. When land is already in use prior to the enactment of a zoning ordinance or regulation, an exception to the zoning regulation is generally allowed for any pre-existing nonconforming use of the property. However, in granting this exception, there is a policy of restriction and eventual elimination. *Crumbaker v. Hunt Midwest Mining, Inc.*, 275 Kan. 872, 881, 69 P.3d 601 (2003).

"Consequently, '[f]or legal and political reasons, zoning drafters avoided confrontation with these landowners by permitting existing uses to continue, but reduced their life expectancy by limiting the landowners' right to change, expand, or recommence after abandonment, with minimal exceptions.' [Citations omitted.] We have defined such an 'existing' or 'nonconforming use' as 'a lawful use of land or buildings which existed prior to the enactment of a zoning ordinance and which is allowed to continue despite the fact it does not comply with the newly enacted use restrictions.' [Citation omitted.]" *Crumbaker*, 275 Kan. at 881.

Courts have consistently ruled that the right to a preexisting nonconforming use is to be strictly construed and that the burden of proof is on the party claiming the nonconforming use. *Crumbaker*, 275 Kan. at 881. Here, the County presented evidence that the Navarros expanded their training facility after 1997, but the extent of the expansion was disputed by the Navarros. The district court ultimately determined the County had "failed in its burden of proof to prove that [the Navarros'] horse training is not protected as a pre-existing usage . . . ." The problem with the district court's determination is that the court imposed the burden of proof on the wrong party. The burden of proof on this issue was not on the County, but instead the burden was on the Navarros as the party claiming the preexisting use. *Crumbaker*, 275 Kan. at 881.

This case is reversed and remanded for a new trial to determine the extent that the Navarros' horse training facility is exempt from the County's zoning regulations based upon a preexisting use. The Navarros shall have the burden of proof on this issue. To the extent the Navarros fail to prove a preexisting use of their property, then the County's request for injunctive relief should be granted.

Reversed and remanded with directions.

GREEN, J., dissenting: I disagree with the majority's decision about the propriety of allowing injunctive relief under the circumstances of this case. As the majority points out, the trial court, in denying Seward County's petition for a permanent injunction, stated in its order: "These matters are in the nature of either a public or private nuisance, if the [County] feels aggrieved by these matters, [it] should address them in that light." I infer from the trial court's statements that it had determined that the County had an adequate remedy at law to resolve the alleged public nuisance. Citing *Sampel v. Balbernie,* 20 Kan. App. 2d 527, 530-31, 889 P.2d 804 (1995), our Supreme Court in *Empire Mfg. Co. v. Empire Candle, Inc.,* 273 Kan. 72, 86, 41 P.3d 798 (2002), stated the requirements for obtaining injunctive relief:

" '(1) there is a reasonable probability of irreparable future injury to the movant; (2) an action at law will not provide an adequate remedy; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest.' [Citations omitted.]"

The *Empire* court indicated that the above criteria must be satisfied before obtaining injunctive relief. 273 Kan. at 87.

As pointed out by the majority, K.S.A. 2005 Supp. 12-761(a) furnishes criminal penalties for violations of zoning regulations. K.S.A. 2005 Supp. 12-761(b) gives a city or a county the authority to abate nuisances maintained in violation of its zoning regulations. Consequently, the County had an adequate remedy at law.

Citing *Mid-America Pipeline Co. v. Wietharn,* 246 Kan. 238, 242, 787 P.2d 716 (1990), and *Kansas East Conf. of the United Methodist Church v. Bethany Med. Ctr.,* 266 Kan. 366, 382-83, 969 P.2d 859 (1998), for the proposition that a party seeking injunctive relief must demonstrate that it lacks an adequate remedy at law, the *Empire* court stated: "This court, as well as the Court of Appeals, has stated the necessity for a party seeking injunctive relief to show that an action at law will not provide adequate remedy." 273 Kan. at 87. Here, the County would have had an adequate remedy at law for the alleged nuisance violation under K.S.A. 2005 Supp. 12-761(a) and (b).

Moreover, the *Empire* court stated that a trial court's discretion in granting injunctive relief "is bounded by the [*Sampel*] criteria." 273 Kan. at 87. The *Empire* court further explained that if a trial court grants injunctive relief when the *Sampel* criteria has not been satisfied, the trial court abuses its discretion. 273 Kan. at 87. The *Empire* case leaves no doubt that the *Sampel* criteria must be satisfied before the trial court can properly grant injunctive relief.

## No Irreparable Harm

As stated earlier, in setting out its reasons for rejecting the County's petition for injunctive relief, the trial court stated: "These matters are in the nature of either a public or private nuisance, if the [County] feels aggrieved by these matters, [it] should address them in that light." I also infer from the trial court's statements that it had determined that the County had failed to show "a reasonable probability of irreparable future injury to the [County]."

In its petition, the County alleged that the Navarros' horse training facility was creating "a substantial traffic hazard to Seward County residents utilizing [Blue Bell Road]," and it constituted a public nuisance. Our Supreme Court in *Vickridge Homeowners Ass'n, Inc. v. Catholic Diocese of Wichita*, 212 Kan. 348, 355, 510 P.2d 1296 (1973), explained that nuisances could be broken down into two distinct categories:

"nuisance *per se* and nuisance *per accidens* or in fact. A nuisance *per se* is an act, instrument, or structure in [*sic*] which is a nuisance at all times and under any circumstances. A nuisance *per accidens* or nuisance in fact is an act, instrument, or a structure which becomes a nuisance by reason of surrounding circumstances. [Citations omitted.]"

Determining whether a property owner's use of land is a nuisance subject to an injunction depends on several factors: " 'locality and surroundings, the number of people living there, the prior use, whether it is continual or occasional, and the extent of the nuisance and injury caused to the neighbor from the use.' " *Dill v. Excel Packing Co.*, 183 Kan. 513, 524, 331 P.2d 539 (1958). The alleged nuisance in this case, that is, the causing of a possible traffic hazard because of parked vehicles along Blue Bell Road, was apparently occasional incidents occurring only on Sunday afternoons. In find-

ing that these incidents occurred on several Sunday afternoons, the trial court stated in its material facts:

"[O]n several Sunday afternoons, the Defendants invited several people they claim to be family or friends to the property to train their respective horses upon the horse training track. The Defendants train only their own horses and ride them on the track. The training is designed to teach the horses to get out of the starting gate in a racing manner.

"The Defendants do not train, stable, board or keep horses belonging to others on the property.

"At these Sunday training events, the people who bring their horses to these Sunday training events are allowed to ride their horses and train them using the track and facilities of the Defendants.

"At these Sunday events, there is no wagering, no concessions, no permitted use of alcohol, and the Defendants do not charge the people who bring their horses a fee to use the training track or other facilities."

Clearly, the above activities would not rise to the level of a nuisance per se.

It is apparent that the alleged harm that the County complains about does not warrant injunctive relief. The County has failed to establish that the activities at the track are likely to cause irreparable future injury. See *Mid-America Pipeline Co.*, 246 Kan. at 242 ("Mere apprehension or possibility of wrong or injury ordinarily does not warrant the granting of an injunction."). A prospective injunction like the kind requested by the County is not to be granted easily. See *Vickridge Homeowners Ass'n, Inc.*, 212 Kan. at 361 ("There is no evidence of probable clouds of dust here and under the circumstances shown to presently exist injunctive relief is not warranted.").

The County has simply failed to establish that it lacked an adequate remedy at law. Moreover, the County has failed to show that the Navarros' current use of their land to breed, raise, and train their horses is likely to cause irreparable future harm to the County. The *Sampel* decision declared the precise criteria for obtaining injunctive relief; the present case does not fit within that criteria. Because the trial court properly denied the County's petition for injunctive relief, I would affirm the trial court.